JONES, JUDGE:
Appellants, Sean R. Delahanty and Stephanie Pearce Burke, in their official capacities as Jefferson District Court Judges, bring this appeal challenging a writ of mandamus/prohibition entered by the Jefferson Circuit Court. Following a careful review of the record and applicable law, we affirm.
I. BACKGROUND
In 2012, the Kentucky General Assembly amended KRS 1 186.574 to authorize county attorneys to operate traffic safety programs for traffic offenders prior to the adjudication of their traffic offenses, for which the county attorneys are permitted to charge a "reasonable fee."
*495 KRS 186.574(6)(a)-(c)(1).[2] The Jefferson County Attorney implemented a program under KRS 186.574(6), known as Drive Safe Louisville ("DSL"), in 2013. In brief, upon a traffic offender's successful completion of the DSL program, the County Attorney moves the district court to dismiss the traffic violation charge with prejudice.[3] Therefore, unlike state traffic school, traffic offenders who participate in the DSL program avoid having charges on their record and points added to their drivers' licenses.[4]
Shortly after implementation of the DSL program, a dispute arose as to whether the judges of the Jefferson District Court could require DSL program participants to pay court costs prior to dismissing their citations. The Jefferson Circuit Court entered a writ of prohibition and/or mandamus directing all Jefferson District Court judges to dismiss charges against DSL program participants without imposing court costs. The order granting the writ was appealed to this Court and was then transferred to the Kentucky Supreme Court. In 2015, while the matter was pending before the Kentucky Supreme Court, the General Assembly amended KRS 186.574(6) to include language requiring any participant in a county attorney operated traffic safety program to "pay a thirty dollar ($30) fee to the county attorney in lieu of court costs." KRS 186.574(6)(e). As a result, by order entered June 11, 2015, the Kentucky Supreme Court dismissed the appeal as moot.
During the pendency of the appeal, some-but not all-of the Jefferson District Court judges held cases in which the County Attorney had moved for dismissal of traffic citations issued to DSL program participants in abeyance. At the time the Kentucky Supreme Court dismissed the appeal, approximately 2,300 DSL cases were being held in abeyance at the district court level. After the Kentucky Supreme Court entered its dismissal order, those cases were scheduled for disposition on the district court's November 17, 2015 docket; on September 22, 2015, Judge Delahanty issued an order prohibiting any of the 2,300 cases to be advanced to any other docket without his prior approval.
Two days later, Judge Delahanty emailed the Jefferson County Attorney to inform him that he had selected five pending DSL cases and moved them to the October 1, 2015 docket. Judge Delahanty stated that he believed the five listed cases were representative of the 2,300 cases previously held in abeyance and that any order issued on October 1, 2015, would apply *496 to all DSL cases. The County Attorney filed an objection to Judge Delahanty's "email order" on September 29, 2015. In addition to noting that the email communication did not comport with the requirements for an order, the County Attorney contended that it was unlawful for the district court to unilaterally select five cases and determine that they adequately represented all 2,300 DSL cases currently pending. Notwithstanding its objections, the County Attorney appeared at the October 1, 2015 hearing.
At the outset of the hearing, Judge Delahanty indicated that he had advanced the five cases to discuss the effect of the recent Supreme Court order and how the court was going to proceed with the 2,300 DSL cases. For the remainder of the hearing-approximately an hour and twenty minutes-Judge Delahanty espoused his belief that KRS 186.574(6) was "amateurish" and poorly written, and he extensively questioned the County Attorney on various aspects of the DSL program. The County Attorney attempted to answer all questions and ended the hearing by requesting the district court to advance and dismiss all pending DSL cases. In the days that followed, Judge Delahanty sent several emails to the County Attorney requesting additional information on the DSL program.[5] Judge Delahanty also visited the County Attorney's office to participate in a demonstration of the DSL program.
On October 23, 2015, Judge Delahanty issued a twenty-page order "granting motions to dismiss in part, denying in part" (the "October 2015 Order"). The first eighteen pages of the order addressed a myriad of issues, none of which had been raised by the parties; for example, the order discussed due process, separation of powers, potential ethical issues under the Kentucky Rules of Professional Conduct, equal protection, and the reasonableness of the DSL program's fees. Ultimately, the district court concluded that the DSL program and KRS 186.574(6) were unconstitutional, as written and applied.
Even though Judge Delahanty concluded that the DSL program was unconstitutional, he did not order the County Attorney to refund the fees he collected from the defendants for participation in the DSL program. To the contrary, Judge Delahanty granted the County Attorney's motions to dismiss in all but one of the 2,300 DSL program cases before him.[6] He reasoned that the County Attorney had entered into "plea agreements" with the traffic violators under which the County Attorney promised that the traffic charges would be dismissed upon successful completion of the DSL program. According to Judge Delahanty, the defendants had detrimentally relied on the County Attorney's offer making the agreements binding notwithstanding his conclusion that the DSL program and its authorizing statute were unconstitutional.
Thereafter, Judge Delahanty and his colleague, Jefferson District Court Judge Stephanie Pearce Burke, began treating the portion of the October 2015 Order declaring the DSL program and KRS 186.574(6) unconstitutional as binding precedent. In reliance on the October 2015 Order, both judges began routinely: (1) advising counsel and persons appearing before them that the DSL program was no *497 longer available as an option; (2) no longer referring traffic offenders to the DSL program; (3) not continuing cases for the purpose of allowing would-be participants to take part in the DSL program; and/or (4) refusing to dismiss citations upon the attendees' completion of the DSL program.
On December 2, 2015, Judge Delahanty entered an order directing that all DSL cases be continued on the court's docket until November 17, 2016.[7] On December 22, 2015, the County Attorney filed a petition for a writ of prohibition and/or mandamus with the Jefferson Circuit Court pursuant to Kentucky Rule of Civil Procedure ("CR") 81, Kentucky Supreme Court Rule ("SCR") 1.040(6), and KRS 32A.080. The County Attorney's petition alleged that Judges Delahanty and Burke were refusing to apply KRS 186.574(6) on the basis that it had been previously declared unconstitutional by Judge Delahanty. The petition went on to allege that Judges Delahanty and Burke had "repeatedly declared and ruled that any citizen who successfully complete[s] the Drive Safe Louisville program and otherwise complies with the financial requirements of that statute will not have their cases dismissed when the Commonwealth, through the Jefferson County Attorney, makes motions to dismiss those respective traffic citations." (Emphasis in original).
The County Attorney requested the circuit court to grant his petition and prohibit Judges Delahanty and Burke from taking any action based on Judge Delahanty's prior opinion declaring KRS 186.574(6) unconstitutional. The County Attorney also requested a writ directing and mandating that Judges Delahanty and Burke give full force and effect to the provisions of KRS 186.574(6).
In their response, Judges Delahanty and Burke contended that a writ was an inappropriate remedy. They noted that, if the October 2015 Order had been adverse to the County Attorney, the County Attorney could have either appealed the Order to the circuit court or requested a certification of the law.[8] Because the October 2015 Order had granted the County Attorney's motions to dismiss, however, Judges Delahanty and Burke alleged that none of the parties affected by it had received an adverse result. Therefore, the judges contended that there could be no showing of irreparable injury sufficient to grant a writ.
On February 22, 2016, the County Attorney moved the circuit court to enter a stay in all DSL cases pending before Judges Delahanty and Burke until final adjudication of the County Attorney's petition for a writ of prohibition and/or mandamus. The County Attorney stated that he had not previously requested a stay because Judge Delahanty had continued all DSL cases until the coming November. However, Judge Delahanty had recently orally informed *498 an Assistant County Attorney that he wanted the County Attorney to appear in front of him because he wanted to advance five of the DSL cases he had previously continued. The County Attorney alleged that Judge Delahanty had not given his office any information concerning which five cases he wanted to advance, why he wanted to advance those cases, or what matters would be taken up at the hearing. Despite the County Attorney's objections, Judge Delahanty held a hearing on the five DSL cases, at which he ordered that the County Attorney's office to refund any fees paid by the DSL defendants and continued those cases until March 3, 2016. The circuit court granted the County Attorney's motion for a stay on March 2, 2016.[9]
On December 29, 2016, the circuit court entered an order granting the County Attorney's petition for a writ and vacating the portion of the October 2015 Order that declared KRS 186.574(6) unconstitutional. In its order, the circuit court found that the only issue that had been properly before Judge Delahanty when he entered the October 2015 Order was the County Attorney's motions to dismiss. Accordingly, the circuit court found that Judge Delahanty had been acting outside of his jurisdiction when he sua sponte ruled that KRS 186.574(6) was unconstitutional. The circuit court further found that petitioning the court for a writ of prohibition and/or mandamus was the appropriate-and only-avenue of redress for the County Attorney. While the circuit court declined to address whether KRS 186.574(6) passed constitutional muster, it delineated the appropriate steps that should be taken when analyzing the issue, should it ever properly appear before the district court.[10]
This appeal followed.
II. STANDARD OF REVIEW
Appeals of a writ action are reviewed under a three-part analysis. Appalachian Racing, LLC. v. Commonwealth , 504 S.W.3d 1, 4 (Ky. 2016). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. Id. "But *499 ultimately, the decision whether or not to issue a writ of prohibition is a question of judicial discretion. So review of a court's decision to issue a writ is conducted under the abuse-of-discretion standard." Id.
III. ANALYSIS
Neither Judge Burke nor Judge Delahanty recognizes the validity of the DSL program. Their position is that Judge Delahanty's October 2015 Order declaring KRS 186.574(6) unconstitutional rendered the DSL program, as well as any other similar program in the Commonwealth, invalid. As it stands currently, traffic offenders whose cases are assigned to either Judge Delahanty or Judge Burke are not able to reap the benefit of KRS 186.574(6) and the DSL program. Against this backdrop, we consider whether the County Attorney sufficiently demonstrated the necessity of a writ.
"A writ of prohibition is an 'extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief.' " Grange Mut. Ins. Co. v. Trude , 151 S.W.3d 803, 808 (Ky. 2004) (quoting Bender v. Eaton , 343 S.W.2d 799, 800 (Ky. 1961) ). "Such a writ bypasses the regular appellate process and requires significant interference with the lower courts' administration of justice." Cox v. Braden , 266 S.W.3d 792, 795 (Ky. 2008). Because of the great caution that must be afforded when determining whether to grant a writ of prohibition, appellate courts abide by a "strict standard" in analyzing petitions for such writs. Id. at 796.
Writs of prohibition may only be granted upon the petitioner showing that:
(1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.
Hoskins v. Maricle , 150 S.W.3d 1, 10 (Ky. 2004). In the second class of writs, where a court is acting within its jurisdiction but erroneously, our Supreme Court has recognized a sub-category of "certain special cases" that merit remedy by a writ where "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." Bender , 343 S.W.2d at 801. In those special cases involving the interest of the orderly administration of justice, the requirement that the petitioner must prove great injustice and irreparable harm is waived. Grange Mut. Ins. Co. , 151 S.W.3d at 808. Notwithstanding, if there is an adequate remedy by appeal, this type of writ is not available. Id.
A. Jurisdictional Writs
"One seeking a writ when the lower court is acting 'outside of its jurisdiction' need not establish the lack of an adequate alternative remedy or the suffering of great injustice and irreparable injury. Those preconditions apply only when a lower court acts 'erroneously but within its jurisdiction'." Goldstein v. Feeley , 299 S.W.3d 549, 552 (Ky. 2009). "In the context of the extraordinary writs, 'jurisdiction' refers not to mere legal errors but to subject-matter jurisdiction ... which goes to the court's core authority to even hear cases." Lee v. George , 369 S.W.3d 29, 33 (Ky. 2012) (internal citations omitted). A court has "subject matter jurisdiction when the 'kind of case' identified in the pleadings is one which the court has been *500 empowered, by statute or constitutional provision, to adjudicate." Daugherty v. Telek , 366 S.W.3d 463, 467 (Ky. 2012).
"Once a court has acquired subject matter and personal jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the existence of [subject-matter] jurisdiction." Hisle v. Lexington-Fayette Urban Cty. Gov't , 258 S.W.3d 422, 429-30 (Ky. App. 2008). Thus, in assessing jurisdiction for the purpose of deciding whether a writ is appropriate, we ask whether the judge was vested with the authority to act in the particular category of case at issue. If the judge had the authority to act in the kind of case at issue, the judge had subject-matter jurisdiction, and a writ is not available under the first category of writs. See Sitar v. Commonwealth , 407 S.W.3d 538, 542 (Ky. 2013).
The circuit court concluded that a writ was appropriate because Judge Delahanty did not have jurisdiction to sua sponte invalidate KRS 186.574(6). Because the circuit court concluded that jurisdiction was lacking, it did not analyze the substance of the other errors alleged by the County Attorney before granting the requested writ. However, the cases before Judge Delahanty involved traffic offenses. Section 113(6) of the Constitution of Kentucky ("Ky. Const.") states that: "The district court shall be a court of limited jurisdiction and shall exercise original jurisdiction as may be provided by the General Assembly." Ky. Const. 113 (6). The General Assembly vested the district courts with subject-matter jurisdiction over traffic offenses. See KRS 24A.110. Therefore, Judge Delahanty had subject-matter jurisdiction to act on the cases before him.
The errors alleged by the County Attorney in his writ petition concern the manner in which Judge Delahanty raised and decided the constitutionality of KRS 186.574(6), and his and Judge Burke's continued refusal to recognize the validity of KRS 186.574(6) in the traffic-related cases assigned to them. The alleged errors implicate not subject-matter jurisdiction, but rather implicate particular-case jurisdiction, which describes the situation when a court has subject-matter jurisdiction over a particular type or class of action, but incorrectly exercises its authority. Masters v. Masters , 415 S.W.3d 621, 624, n.2 (Ky. 2013). Errors directed at particular-case jurisdiction belong in the second category of writs, not the first. Thus, the circuit court erred when it concluded that a writ was appropriate because Judge Delahanty lacked jurisdiction.
B. Erroneous Action Writs
1. Inadequate Remedy
The second classification of writ is available if the petitioner can establish there is no adequate remedy by appeal and great injustice and irreparable harm will result.[11] Hoskins , 150 S.W.3d at 6. "Lack of an adequate remedy by appeal is an absolute prerequisite to the issuance of a writ under this second category." Indep. Order of Foresters v. Chauvin , 175 S.W.3d 610, 615 (Ky. 2005). No adequate remedy by appeal means that any injury "could not thereafter be rectified in subsequent proceedings in the case." Bender , 343 S.W.2d at 802.
Judge Delahanty's order placed the County Attorney in an odd position. Although the County Attorney ardently *501 disagreed with the conclusion that KRS 186.574(6) was unconstitutional, Judge Delahanty granted the ultimate relief the County Attorney sought, dismissal of the charges. This left the County Attorney without the ability to appeal Judge Delahanty's decision to the circuit court. See Newkirk v. Commonwealth , 505 S.W.3d 770, 775 (Ky. 2016) ("The order of dismissal granted the Commonwealth exactly what it asked for and cannot be regarded as an order adverse to the Commonwealth from which an appeal may be taken."). Since there were no acquittals, the October 2015 Order likewise left the County Attorney without the ability to request a certification of law from the Kentucky Supreme Court. CR 76.37(10), in conjunction with Section 115 of the Constitution of Kentucky, permits the Commonwealth to obtain appellate review of a final order that is adverse to the Commonwealth. Commonwealth v. Doss , 510 S.W.3d 830, 832 (Ky. 2016). "[A] certification request from the Commonwealth is proper only after an acquittal. " Commonwealth v. Carman, 455 S.W.3d 916, 922 (Ky. 2015) (emphasis added).
Judge Delahanty's order and Appellants' subsequent reliance on the order affect the County Attorney's ability to exercise its statutory and prosecutorial authority. Since no other avenues of relief were available to challenge the order, the County Attorney was authorized to seek a writ from the circuit court.
2. Erroneous Actions[12]
a. Sua sponte consideration of constitutional issues
Appellants maintain that Elk Horn Coal Corp. v. Cheyenne Res., Inc. , 163 S.W.3d 408 (Ky. 2005), vested Judge Delahanty with the authority to take up the constitutional issue even though it was never raised by the parties. In Elk Horn , the Kentucky Supreme Court determined that KRS 26A.300 violated the separation of powers provisions of the Kentucky Constitution because it limited the Kentucky Supreme Court in exercising its jurisdiction to review cases from lower courts.[13] Id. at 424.
Appellants seize on a short passage following the separation of powers discussion in Elk Horn wherein the Court explained how that exact issue came to be decided by it. The Court explained that the separation of powers issue had not been raised in the lower court, "but rather it was raised sua *502 sponte by members of [the Kentucky Supreme Court] during oral argument." Id. The Court noted that it was not "precluded by any rule or constitutional provision from addressing the issue" because it had given the parties an opportunity to address the issue and confined itself to the record. Id. Appellants read Elk Horn as cloaking them with the authority to raise and decide constitutional issues on their own initiative whenever they believe it is necessary to extinguish some practice they believe is unconstitutional. Appellants explain as follows in their brief to this Court: "A simpler way to describe the principle might be: a court does not have to ignore the unconstitutionality of a given law merely because the litigants do not care about the subject."
Appellants have not cited any authority that applies Elk Horn so broadly, and we have not located any. Moreover, we do not believe that the Kentucky Supreme Court ever intended Elk Horn to be applied this broadly. In a footnote, the Elk Horn Court restated the general rule that a court should not "inquire into the constitutionality of a statute ... on its own motion[.]" Id. at 424, fn. 73. It went on to explain that this general rule can give way when "constitutional questions [are] inherently involved in the determination of the cause[.]" Id.
The Elk Horn case is remarkably different from the present one in a number of important ways. First, the Elk Horn case came before the Kentucky Supreme Court as a constitutional challenge on equal protection grounds, an issue that was raised and litigated by the parties at the lower court. From the inception of the case, the Elk Horn parties were actively litigating the constitutionality of KRS 26A.300. Only after the Kentucky Court decided the constitutional issue posed by the parties, that KRS 26A.300 was unconstitutional because it violated equal protection, did it take up the separation of powers issue.
In this case, no actual litigant ever raised an issue with respect to KRS 186.574 's constitutionality. Unlike in Elk Horn , there was no developed record for Judge Delahanty to rely on. Instead of confining himself to the existing record, Judge Delahanty actually directed certain matters to be added to the record for the purpose of taking up the constitutional issue and conducted his own factual inquiry, even going so far as to visit to the County Attorney's office to view a demonstration of the DSL program.[14] This goes far beyond the situation in Elk Horn .
Moreover, the constitutional issue the Kentucky Supreme Court raised in Elk Horn was a unique one that only the Kentucky Supreme Court could properly address because it concerned a statute that encroached on the Court's exercise of its appellate jurisdiction as provided by its rules. In contrast, Judge Delahanty sua sponte raised issues that are much broader *503 than the limited issue considered by the Kentucky Supreme Court in Elk Horn . He questioned the public policy rational behind the statute; he concluded the statute violated Section 59 of the Kentucky Constitution, which bars the General Assembly from passing "local or special acts concerning" a series of subjects; he considered and applied our Rules of Professional Conduct regarding how the County Attorney advertised the DSL program; and he considered whether the statute violated either federal or state principles of equal protection because it did not have an exception to allow indigent individuals to participate in the program. We do not agree with Appellants that Elk Horn sanctions this type of wholesale, unprompted judicial review.
In fact, subsequent decisions by our Supreme Court continue to recognize the importance of judicial restraint in considering constitutional challenges, even ones raised by parties. In W.B. v. Commonwealth, Cabinet for Health and Family Services , 388 S.W.3d 108, 117 (Ky. 2012), the Kentucky Supreme Court cautioned against taking up constitutional issues that had not yet ripened into actual disputes. It explained that "ripeness [ ] prevents courts from interfering with legislative enactments until it is necessary to do so, and thus enhances the quality of judicial decision-making by ensuring that cases present courts an adequate record to permit effective review and decision-making."
Even though Judge Delahanty has subject-matter jurisdiction over traffic violations, his jurisdiction is limited by the same confines that bind the entire judiciary. When Judge Delahanty issued the October 2015 Order, the only issues before him were the County Attorney's motions to dismiss the 2,300 pending DSL cases. While the Order did dispose of those cases as requested, it needlessly delved into issues concerning the constitutionality and ethical administration of the DSL program.[15] A review of the record makes it clear that these issues were not actually before the district court because no party to the cases raised the issues, and they were not necessary to the ultimate outcome of the cases before Judge Delahanty.[16]
*504 "A judge's sua sponte declaration of unconstitutionality is a derogation of the strong presumption of constitutionality accorded legislative enactments." 16 Am. Jur. 2d Constitutional Law § 127. As the Court stressed in Spector Motor Service v. McLaughlin , 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944), "[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable." Given the fact that none of the actual litigants in the cases before Judge Delahanty questioned the constitutionality of KRS 186.574(6) or the DSL program, it was certainly possible for Judge Delahanty to rule on the cases before him without taking up these issues.
Appellants counter that it was necessary for Judge Delahanty to address the constitutionality of KRS 186.574(6) and the DSL program because the district court could not dismiss the charges if doing so would be contrary to the manifest public interest. We cannot accept that this duty allowed Judge Delahanty to question the General Assembly's actual authority to enact KRS 186.574(6). When a trial judge is faced with a motion to dismiss in a criminal case, the central inquiry is whether, in moving to dismiss charges, the prosecutor is acting in bad faith or with impropriety. See Rinaldi v. United States , 434 U.S. 22, 30, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977). "Factors that indicate a motivation other than an assessment of the public interest include the acceptance of a bribe, the desire to attend a social event rather than trial, or personal dislike of the victim of the crime." Hoskins , 150 S.W.3d at 21.
In the cases before Judge Delahanty, there was no showing that the County Attorney was acting in bad faith in setting up, administering, or applying the DSL program in any particular case. To the contrary, the record was clear that the County Attorney was acting consistent with the authority the General Assembly authorized in KRS 186.574(6). The actions Judge Delahanty questioned were those of the General Assembly in deciding to enact KRS 186.574(6), not the County Attorney in carrying out the statute.
Nevertheless, according to Appellants, after having studied the DSL program in depth, Judge Delahanty concluded that it would be "clearly contrary to manifest public interest" for the court to facilitate the program's operation by granting the County Attorney's motions to dismiss. Appellants maintain that Judge Delahanty acted within his authority because the County Attorney's Office profits from administering the DSL program. To support this contention, Appellants rely on Marshall v. Jerrico, Inc. , 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). We do not believe Marshall actually supports the proposition for which it has been cited to us.
The Court in Marshall actually upheld the validity of a civil penalty even though the enforcement agency was permitted to keep a portion of the penalty. The Court explained that: "The constitutional interests in accurate finding of facts and application of law, and in preserving a fair and open process for decision, are not to the same degree implicated if it is the prosecutor, and not the judge, who is offered an incentive for securing civil penalties." Id. at 248-49, 100 S.Ct. 1610. While Marshall did recognize that due process could be violated in certain cases, the Court seemed most concerned about instances where the prosecutor would personally benefit. It pointed out that those facts were not present in Marshall because, regardless of what the agency might recoup, the salary of the administrator was fixed by law. The *505 Court was also not convinced that agency recoupment would taint the process to such a degree to render the penalty scheme unconstitutional.
Following Marshall , courts have generally rejected facial challenges to laws that allow prosecutors' offices to obtain a financial benefit as part of their enforcement. For example, in State ex rel. County of Cumberland v. One 1990 Ford Thunderbird , 371 N.J. Super. 228, 852 A.2d 1114 (N.J. Super. Ct. App. Div. 2004), a New Jersey appellate court upheld a forfeiture law from which local prosecutors' offices profited. The court concluded that the law's challengers failed "to overcome the presumption that public officials, when following statutorily established procedures, are proceeding in good faith and in a proper exercise of the power and discretion reposed in them." Id. at 1125. In acknowledging legislative and executive-branch judgments underlying the adoption and implementation of the forfeiture laws at issue, the New Jersey court suggested that, in light of separation-of-powers considerations, the constitutional presumption that prosecutors were acting disinterestedly would be hard to overcome. It also indicated that "[s]pecific allegations of overreaching or otherwise impermissible conduct or motives" should be addressed as part of particular cases, not through a wholesale attack on the entire statutory scheme. Id. at 1124-25.
Judge Delahanty concluded impermissible factors were inherent in all county-attorney operated traffic safety programs, including the DSL program. He made this determination on a very scant record without the benefit of any formal discovery. What was in the record indicated that information about the DSL program is made available to traffic violators. The violators choose whether they want to participate in the program. The County Attorney does not decide who to cite for traffic offenses; those decisions are made by the police officers. And, there is nothing in the record to indicate that the County Attorney has actually pressured any traffic offenders into participating in the program. Judge Delahanty's reasoning hinged largely on his conclusion that the County Attorney's ability to apportion part of the DSL program fee for his own budgetary needs necessarily undermined the public's confidence in the court system. However, Marshall certainly does not invalidate all laws that allow enforcement agencies, like the County Attorney's Office, to profit. Just as in Marshall , none of the prosecutors stand to profit individually from vigorous enforcement, and the prospect for improper influence as a general matter appears quite remote.
Lastly, we cannot overlook the logical fallacy in Appellants' contentions that Judge Delahanty was duty bound to consider the constitutionality of KRS 186.574(6) and the DSL program before deciding whether to grant the County Attorney's motions to dismiss. Even though Appellants maintain that Judge Delahanty had such duty, he did not actually apply his determinations to the cases before him. In fact, Judge Delahanty granted the County Attorney's motions to dismiss, and allowed the County Attorney's Office to retain the program fees it received from the DSL program participants. The only cases affected by Judge Delahanty's declaration of unconstitutionality were future cases that came before him and presumably Judge Burke. This is a textbook example of an advisory opinion. See Veith v. City of Louisville , 355 S.W.2d 295, 297 (Ky. 1962) ("The sweeping language of the judgment demonstrates that no one's rights were being finally adjudicated but that the court was rendering an advisory opinion on a hypothetical question."). And, *506 simply put, "[t]he courts of Kentucky do not render advisory opinions." Livingston Cty. Farm Supply, Inc. v. Spencer , 593 S.W.2d 76, 78 n.4 (Ky. 1979) ("This issue should have been and now is reserved until a case actually presents it.").[17]
Having closely examined the procedural posture underlying Judge Delahanty's order, we hold that Judge Delahanty erred when he sua sponte addressed the constitutionality of KRS 186.774(6) and the DSL program. The issue of constitutionality was not essential to the motions before him, had not been raised by any of the parties, and had no effect on his final disposition of those cases. It constituted nothing more than an advisory opinion, which no judge, even one with subject-matter jurisdiction, has the authority to issue.
b. Failure to apply proper burden
Even if we assume for the sake of argument that Judge Delahanty had the authority to interject the constitutional question into the litigation, the manner in which he did so was improper. Judge Delahanty failed to apply longstanding and well-established case law requiring that any analysis regarding a statute's constitutionality must begin with one basic presumption: the statute is constitutional. See Util. Mgmt. Grp., LLC v. Pike Cty. Fiscal Court , 531 S.W.3d 3, 12 (Ky. 2017). Because statutes are presumed constitutional, the party challenging a statute, not the state , bears the burden of proving the statute is unconstitutional. Perkins v. Commonwealth , 511 S.W.3d 380, 390-91 (Ky. App. 2016). "The one who questions the validity of an act bears the burden to sustain such a contention." Commonwealth v. Harrelson , 14 S.W.3d 541, 547 (Ky. 2000) (quoting Stephens v. State Farm Mut. Auto Ins. Co. , 894 S.W.2d 624 (Ky. 1995) ). A review of the record in this case demonstrates that Judge Delahanty erroneously shifted the burden to the County Attorney to prove the DSL program and its authorizing statute were constitutional.[18]
c. Lack of notice and due process to the County Attorney
"The hallmark of procedural due process is 'the opportunity to be heard at a meaningful time and in a meaningful manner.' "
*507 Harrison Silvergrove Prop., LLC v. Campbell Cty. & Mun. Bd. of Adjustment , 492 S.W.3d 908, 915 (Ky. App. 2016) (quoting Hilltop Basic Res. v. Cty. of Boone , 180 S.W.3d 464, 468 (Ky. 2005) ). "That is, notice and an opportunity to be heard." Id. (citing Dep't of Revenue, Fin. & Admin. Cabinet v. Wade , 379 S.W.3d 134, 138 (Ky. 2012) ). Our criminal and civil procedural rules are designed to prevent litigants from engaging in "trial by ambush." The judiciary must also play by these same rules if the integrity of our judicial system is to withstand the test of time and the public's scrutiny.
The County Attorney was deprived of the most basic tenets of due process in the district court proceedings. Judge Delahanty notified the County Attorney-via email-that he intended to advance five pre-selected DSL cases, which he believed were representative of all the DSL cases. Judge Delahanty did not explain why he believed those five cases were representative of the 2,300 DSL cases. Most importantly, he did not inform the County Attorney that he intended to question him on the merits, procedures, and constitutionality of the DSL program. The County Attorney came to the October 1, 2015 hearing expecting only to address undisputed motions to dismiss the DSL cases. The County Attorney could only anticipate a relatively simple, cut-and-dry proceeding. Instead, he arrived at the hearing to face a judge who expressed clear disdain for KRS 186.574(6) and the DSL program. He faced a barrage of questions regarding the statute and its implementation, development, and application in Jefferson County and the other 119 counties across the Commonwealth, and its financial costs. Judge Delahanty undertook his own investigation into the DSL program and its administration. All of this was done without warning, and without providing the County Attorney with a meaningful opportunity to develop a record of his own. This is an error of grave magnitude.
d. Failure to join the Attorney General
The lack of notice and a fair opportunity to be heard was not limited to the County Attorney. Equally troubling is the fact that the Attorney General was not provided with any advance notice before Judge Delahanty struck down the statute. When a litigant challenges the constitutionality of a statute, both statutory authority and the Civil Rules mandate certain steps that must be taken.
KRS 418.075(1) states as follows:
In any proceeding which involves the validity of a statute, the Attorney General of the State shall, before judgment is entered, be served with a copy of the petition, and shall be entitled to be heard, and if the ordinance or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the petition and be entitled to be heard.
This mandate is reiterated in CR 24.03, which states: "When the constitutionality of an act of the General Assembly affecting the public interest is drawn into question in any action, the movant shall serve a copy of the pleading, motion or other paper first raising the challenge upon the Attorney General."
"[S]trict compliance with the notification provisions of KRS 418.075 is mandatory[.]" Benet v. Commonwealth , 253 S.W.3d 528, 532 (Ky. 2008). "Among the purposes underlying this statute is the right of the people, by the chief law officer, to be heard on matters affecting the validity of duly enacted statutes." Maney v. Mary Chiles Hosp. , 785 S.W.2d 480, 481 (Ky. 1990) (citing KRS 15.020 ). "Likewise, the prevention of collusive, non-adversarial proceedings between or among litigants *508 which might result in the invalidation of state law is a matter of public interest." Id.
While the DSL proceedings did not originate as a challenge to the validity of KRS 186.574(6), Judge Delahanty's questioning at the hearing on the motions to dismiss and his October 2015 Order made that issue the focus of the proceedings. Appellants readily concede that Judge Delahanty did not notify the Attorney General before he decided the constitutional issue. They contend, however, that there has been no violation of KRS 418.075(1) or CR 24.03 because those rules impose notification requirements on litigants, not judges.[19]
Indeed, under normal circumstances, a litigant-not a judge-would be the movant raising the constitutional issue and would therefore be responsible for notifying the Attorney General. But see Maney , 785 S.W.2d at 481 ("[N]either appellant, appellee nor the trial court gave any notice to the Attorney General that an issue had been raised as to [the statute's] constitutionality.) (Emphasis added). Unlike the typical case, however, no litigant raised a constitutional issue; the district court judge did. Therefore, we hold that under KRS 418.075(1) and CR 24.03, Judge Delahanty should have notified the Attorney General that he would be calling the constitutionality of KRS 186.574(6) into question.
"[T]he intent of the Legislature in its enactment of KRS 418.075 is clear that no judgment shall be entered which decides the constitutionality of a statute until the Attorney General is given notice and an opportunity to be heard." Maney , 785 S.W.2d at 482. Judge Delahanty's failure to notify the Attorney General was clearly erroneous.[20] It deprived the Attorney General of the right to be heard on an issue that involves thousands of citizens of this Commonwealth.
e. Separation of powers
In declaring the statute at issue unconstitutional, Judge Delahanty took it upon himself to decide whether the statute was in the public's interest. He also questioned the timing and wisdom of the *509 General Assembly's decision to allow county attorneys to operate traffic safety programs. "This is precisely the type of intrusion our separation-of-powers provisions were enacted to prevent." Appalachian Racing, LLC., 504 S.W.3d at 6. While Judge Delahanty may personally believe that state traffic school is superior to any program established by the county attorney, the General Assembly clearly thought otherwise. "[T]he Legislature by its statutory declarations is supreme in the adoption of what may be the state's public policy on a particular question." Bankers Bond Co. v. Buckingham , 265 Ky. 712, 97 S.W.2d 596, 600 (1936). "It is beyond the province of a court to vitiate an act of the legislature on the ground that the public policy therein promulgated is contrary to what the court considers to be in the public interest." Owens v. Clemons , 408 S.W.2d 642, 645 (Ky. 1966).
Further, by refusing to allow traffic offenders the option to participate in the DSL program and refusing to grant dismissals based on participation in that program, Judge Delahanty and Judge Burke have infringed on the power of the executive branch. "[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case...." United States v. Nixon , 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." Wayte v. United States , 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985) (emphasis added).
Under RCr 21 9.64, an "attorney for the Commonwealth, with permission of the court, may dismiss ... [a] uniform citation prior to the swearing of the jury or, in a non-jury case, prior to the swearing of the first witness." Generally speaking, the "leave of the court" requirement in RCr 9.64 does not violate the separation of powers doctrine. Hoskins , 150 S.W.3d at 16. A caveat to that general principle, however, is that judicial discretion must be properly restrained in determining whether to grant the Commonwealth's motion to dismiss. Id. It upends our entire judicial system for a court to withhold permission on the basis that it does not agree with the statutory scheme under which dismissal is sought.
The General Assembly expressly gave the County Attorney the authority to operate a pre-adjudication traffic safety program. There is nothing in the record to suggest that the County Attorney is administering the DSL program in any way that is inconsistent with KRS 186.574(6). While Judge Delahanty is free to personally disagree with the General Assembly's public policy decision with respect to the establishment of traffic safety programs run by county attorneys, he lacked the authority substitute the General Assembly's public policy decision with his own ideas. "The district court is not 'empowered to rewrite statutes to suit [its] notion of sound public policy when the General Assembly has clearly and unambiguously established a different notion.' " Leadingham ex rel. Smith v. Smith , 56 S.W.3d 420, 428-29 (Ky. App. 2001) (quoting Sutton v. Transp. Cabinet, Commonwealth, 775 S.W.2d 933, 934 (Ky. App. 1989) ).
Any traffic violator could challenge the constitutionality of the program either as part of some district court proceeding or *510 by way of a declaratory judgment action. The fact that no one has done so to date does not mean that the judiciary is independently authorized to review the statute, and in doing so to disregard the public policy decisions of our General Assembly.
3. Irreparable Injury
Judge Delahanty committed numerous errors in this case. He impermissibly raised the constitutional issue, failed to afford the County Attorney an adequate opportunity to build a record and be heard on the issues, neglected to notify the Attorney General, issued the equivalent of an advisory opinion, and infringed on the powers of our other two branches of our government. These errors are significant.
At this juncture, it is pertinent to consider the posture of the writ petition as it was presented to the circuit court. The actual litigants whose cases were decided as a part of the order issued by Judge Delahanty were not the movants. The movant was the Jefferson County Attorney, acting in his official capacity. This Court has previously held that a county attorney whose official statutory duties are impaired by a district court's order has standing to bring a writ action in his or her official capacity. See Delahanty v. Commonwealth ex rel. Maze , 295 S.W.3d 136, 141 (Ky. App. 2009) ("The county attorney is obligated by statute to prosecute offenses against adults or juveniles subject to the jurisdiction of the district court. KRS 15.725(2). Thus, the Jefferson County Attorney had sufficient legal interest in the action taken by the appellant."). The reasoning we applied in Delahanty applies with equal force in this case.
Appellants' continued reliance on Judge Delahanty's October 2015 Order impacts the County Attorney's ability to exercise his statutorily authorized right to administer the DSL program and impedes the rights of eligible citizens to participate in the program. Id. Moreover, the record makes clear that the County Attorney's ability to administer the DSL program will continue to be hampered by Judge Delahanty's order. Accordingly, we conclude that the threat of harm continues. See Commonwealth, Dep't of Corr. v. Engle , 302 S.W.3d 60, 63 (Ky. 2010).
4. Special Cases Exception
Finally, even if irreparable harm was not present, a writ would be appropriate under the special cases exception. Our Supreme Court has recognized "certain special cases" that merit remedy by a writ where "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." Bender , 343 S.W.2d at 801. "[I]n such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury." Id. Our Supreme Court has previously held that use of the special cases exception is appropriate when a lower court refuses to follow a controlling, mandatory statute. See K.R. v. Commonwealth, 360 S.W.3d 179, 184 (Ky. 2012) ("[T]here is no adequate remedy by appeal, and because allowing the error to go uncorrected at this point in the proceedings would defeat the administration of justice as prescribed by the legislature, the writ of mandamus issued by the circuit court was not an abuse of discretion and was therefore appropriate.").
The actions of Judge Delahanty and Judge Burke have created a disorganized and unjust system in Jefferson County. Judge Delahanty and Judge Burke rely on the October 2015 Order as a basis to disregard KRS 186.574(6), and refuse to allow traffic offenders to participate in DSL
*511 program. As discussed above, Judge Delahanty committed numerous and substantial errors during the proceedings leading up to the issuance of the October 2015 Order. Nevertheless, Appellants continue to rely on the October 2015 Order to deny numerous traffic offenders the right to participate in a program that our General Assembly decided would benefit the Commonwealth and its citizens. "[T]he repetition of this error has great potential to undermine the interest of orderly judicial administration." Commonwealth v. Eckerle , 470 S.W.3d 712, 727 (Ky. 2015).
IV. Conclusion
Throughout these proceedings Appellants urge us to look past the errors committed in the DSL proceedings, and decide the ultimate issue of KRS 186.574(6) 's constitutionality as part of this appeal. Without hesitation, we decline this invitation. If we accepted it, we would be committing many of the same errors we have condemned. The only issue properly before us is simply to determine whether the circuit court correctly granted a writ. If the constitutional issues surrounding KRS 186.574(6) are to be decided, they should be decided only after having been raised by a litigant with standing, and after notice has been given to the Attorney General. Once properly raised before a trial court, those issues can be explored through discovery and briefing. Thereafter, each party can build a factual record that allows for meaningful appellate review.[22]
Having carefully reviewed the record as well as the applicable legal authority, we are thoroughly convinced that the County Attorney met the requirements for the issuance of a writ. The Appellants' actions in refusing to recognize the validity of the DSL program are without current justification. To date, the constitutionality of the DSL program and its authorizing statute have not been challenged by any person with legal standing and have not been litigated in accordance with our notions of due process. The procedural posture created by Judge Delahanty left the County Attorney without an adequate remedy by appeal. In the absence of relief, the County Attorney will not be able to administer the DSL program in accordance with his authority as defined by our General Assembly and thousands of individuals will be deprived of the right to participate in a *512 traffic safety program that the General Assembly decided would serve the public interest. In the absence of relief, the County Attorney, the citizens of this Commonwealth, and our system of justice would suffer great harm and injustice. Thus, we are confident that the circuit court did not abuse its discretion in issuing the writ of prohibition.
We affirm the Jefferson Circuit Court's decision issuing a Writ of Prohibition.
ALL CONCUR.

The statute does not mandate the establishment of traffic safety programs by county attorneys. It gives each individual county attorney the option to establish a traffic safety program. See KRS 186.574(6)(a) ("[A] county attorney may operate a traffic safety program for traffic offenders prior to the adjudication of the offense.") (Emphasis added).

See https://louisvilleky.gov/government/county-attorney/services/drive-safe-louisville-program.

Appellants argue that the statute at issue is a legislative aberration. Having surveyed other jurisdictions, we do not agree that allowing county attorneys to set up and operate fee-based driver safety programs is a novel concept. See Neb. Rev. Stat. Ann. § 29-3606 ("Fees received by a jurisdiction offering a driver's safety training program may be utilized by such jurisdiction to pay for the costs of administering and operating such program, to promote driver safety, and to pay for the costs of administering and operating other safety and educational programs within such jurisdiction."); S.C. Code Ann. § 17-22-310 ("Each circuit solicitor has the prosecutorial discretion as defined in this chapter and shall as a matter of prosecutorial discretion establish a traffic education program in the respective circuits for persons who commit traffic-related offenses that are punishable only by a fine and loss of four points or less.").

The County Attorney filed written responses addressing various questions Judge Delahanty asked about the DSL program.

Judge Delahanty denied the motion to dismiss Case No. 15T016872 after determining that the defendant was not legally eligible to participate in the DSL program. The County Attorney does not appear to have ever alleged that this determination was incorrect.

The exact rationale for the order is unclear.

CR 76.37(10) provides a mechanism for the Commonwealth to request certification from the Kentucky Supreme Court. It provides:
A request by the Commonwealth of Kentucky pursuant to Section 115 of the Constitution of Kentucky for a certification of law shall be initiated in the Supreme Court. The request shall be initiated within thirty (30) days of a final order adverse to the Commonwealth. The Commonwealth shall initiate the certification procedure by motion requesting the Supreme Court to accept the question(s) for review. The motion shall contain the same elements as provided in this Rule, section (3), for a certification order. The motion shall be served and response permitted in conformity with the rules applicable to motion practice in the Supreme Court. If the motion is sustained, thereafter the case shall proceed in the same manner as any other appeal.
CR 76.37(10).

It appears that the stay was entered before the County Attorney actually refunded any program fees.

Initially, Judge Delahanty refused to abide by the circuit court's order. In hearings conducted shortly after the order issued, Judge Delahanty refused to allow traffic offenders to participate in the DSL program on the basis that the circuit court's order did not bind him for another ten days.
Despite Judge Chauvin's recent order, that order is really not in effect-my opinion is, or my belief is-it is not in effect for ten days.... I'm not prepared to accept his ruling at this moment. And I'm not required to by law because I believe I have ten days before it becomes effective.
(R. at 125-26). This statement represents a flawed understanding of our Civil Rules. CR 58 provides that a signed judgment or order becomes effective when entered by the circuit court clerk. There is no Civil Rule that automatically delays the effectiveness of a judgment or order for ten days. The Rule to which Judge Delahanty was likely referencing is CR 62.01. However, CR 62.01 is not self-executing. A motion must be filed before a CR 62.01 stay is triggered. At the time Judge Delahanty refused to give effect to the circuit court's order, no motion had been filed. Therefore, contrary to Judge Delahanty's beliefs otherwise, the order was immediately binding on him. We explained as much in a prior published opinion dealing with a similar issue: "Although the December 16, 1977 filing of a motion for a new trial suspended the judgment prospectively from that point until the motion was overruled on March 20, 1978, it is noted that between December 7 and December 16, 1977, the judgment was in full effect and deemed final and conclusive. Appellees could have abridged this period of time had they chosen to file their motion immediately upon the entry of the circuit court's judgment." Hocker v. Fisher , 590 S.W.2d 342, 344 (Ky. App. 1979).

Appellants have not proffered any argument in their briefing to this Court to refute the County Attorney's position with respect to the inadequacy of other relief.

We have chosen to address the alleged errors committed by Judge Delahanty before considering whether the County Attorney demonstrated irreparable injury. We have elected to do so because the harm in this case cannot be fully evaluated without a full appreciation of the errors committed.

Specifically, the Court held:
KRS 26A.300, as discussed supra, deters discretionary review motions-both frivolous and meritorious-and it thereby limits or restricts the Kentucky Supreme Court in exercising its jurisdiction to review cases from lower courts. By so doing, it invades the constitutional power assigned exclusively to the Kentucky Supreme Court to "exercise appellate jurisdiction as provided by its rules." We note, however, that CR 76.20(9)(a), a rule promulgated by this Court, provides that upon the denial of a discretionary review motion "if a supersedeas bond has been executed, damages for delay shall be recoverable pursuant to KRS Chapter KRS 26A." But, this rule, itself, does not impose a penalty on an unsuccessful Appellant; rather the quoted language was included simply for the purpose of referencing KRS 26A.300, which was enacted by the Legislature. By referencing KRS Chapter 26A, we did not place the Court's imprimatur on KRS 26A.300. Thus, because KRS 26A.300 violates the separation of powers provisions of the Kentucky Constitution, it is unconstitutional.
Id.

The pitfalls of such judicial activism were warned against almost a century ago by the late and much esteemed Judge Cardozo:
The judge is made a prosecutor. He is to have his counsel and assistant counsel and experts and detectives. He is to follow trails of suspicion, to uncover hidden wrongs, to build up a case as a prosecutor builds one. If he were the district attorney of the county, he would do no more and no less. What he learns is not committed to a record available to all the world. It is locked within his breast to be withheld or disclosed as his discretion shall determine. No doubt he is to act impartially, neither presenting from malice nor concealing from favor. One might say the same of any prosecutor. The outstanding fact remains that his conclusion is to be announced upon a case developed by himself. Centuries of common-law tradition warn us with echoing impressiveness that this is not a judge's work.
In re Richardson , 247 N.Y. 401, 411-12, 160 N.E. 655, 658 (N.Y. 1928).

Judge Delahanty engaged in a lengthy discussion regarding how the County Attorney advertised the DSL program to its participants, which he indicated ran afoul of Kentucky's Rules of Professional Conduct. Our Rules of Professional Conduct permit the KBA's Ethics Committee to issue both informal and formal ethics opinions to provide clarity to members of the bar regarding what conduct is permissible by a licensed attorney. The procedure for this is set out in SCR 3.530. Furthermore, attorney discipline matters are overseen exclusively by the Kentucky Supreme Court. Neither the district court nor this Court is vested with any authority whatsoever in matters of attorney discipline or conduct. That authority belongs exclusively to the KBA and the Kentucky Supreme Court. As such, we will not engage in any further discussion of the portions of Judge Delahanty's opinion that relate to our Rules of Professional Conduct. We observe simply that, without question, Judge Delahanty lacked judicial authority to render an opinion regarding whether the County Attorney's conduct in advertising the DSL program violates any of the Rules of Professional Conduct. Ridgeway Nursing & Rehab. Facility, LLC v. Lane , 415 S.W.3d 635, 642 (Ky. 2013).

While courts "are not precluded from supplementing the contentions of counsel through [their] own deliberation and research," if the issue has not so much as been addressed by the parties, a court can "not remedy the defect, especially where, as here, 'important questions of far-reaching significance' are involved." Carducci v. Regan , 714 F.2d 171, 177 (D.C. Cir. 1983). "The premise of our adversarial system is that ... courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." Id.

"[T]he ripeness doctrine requires the judiciary to refrain from giving advisory opinions on hypothetical issues." Associated Indus. of Kentucky v. Commonwealth , 912 S.W.2d 947, 951 (Ky. 1995) ; see also Nordike v. Nordike , 231 S.W.3d 733, 739 (Ky. 2007) ("It is a fundamental tenet of Kentucky jurisprudence that courts cannot decide matters that have not yet ripened into concrete disputes.").

In addition, Judge Delahanty appears to have misapplied some of the substantive law he relied on to strike down KRS 186.574(6). For instance, he determined that the statute violated Section 59 of the Kentucky Constitution, which bars the General Assembly from passing "local or special acts concerning" a series of subjects, including "punishment of crimes and misdemeanors." KRS 186.574(6) applies equally to all counties in Kentucky. The statute vests each of the 120 county attorneys within the Commonwealth with the discretionary authority to enact traffic safety programs. We have grave doubts that this type of statute violates Section 59. See Preston v. Johnson Cty. Fiscal Court , 27 S.W.3d 790, 795 (Ky. 2000) ; see also Johnson v. Peak , 407 S.W.2d 692, 693 (Ky. 1966) ("Plainly the statute is a general one authorizing any county in this state to have a fire department."); Ratliff v. Hill , 293 Ky. 36, 168 S.W.2d 336, 338 (1943) (upholding statute that allowed county judges to determine a "reasonable closing hour" for roadhouses, and recognizes that what is reasonable necessarily varies from county to county). However, we need not definitively decide this issue today. When, and if, a litigant with standing raises the issue, it can be litigated at that time.

Appellants further argue that the statute has been satisfied because they notified the Attorney General when they filed the notice of appeal in this Court. This is a writ proceeding. The issues in this appeal concern whether the circuit court properly granted a writ. Giving the Attorney General notification that Judge Delahanty's actions in declaring KRS 186.574(6) unconstitutional are under appellate review as part of a writ petition is not tantamount to giving the Attorney General notice as part of the district court proceeding where the constitutionality of the statute was actually decided and a record could have been built by the Attorney General.

Other states with similar notification provisions have held that the Attorney General should be notified by the trial court before it sua sponte addresses the constitutionality of a state statute. See State v. Schoening , 770 So.2d 762, 766 (La. 2000) ("The State's interest in defending the statute was also unfairly prejudiced, because the attorney general's office was not notified of the challenge or given the opportunity to represent the State in the statute's defense before the trial court."); Martin v. Lowery , 912 So.2d 461, 466 (Miss. 2005) ("Again, we hold that because neither party raised this issue, nor was notice provided in advance to the Attorney General, and the chancellor sua sponte declared the statute unconstitutional, the chancellor exceeded his authority in holding that Miss.Code Ann. § 65-7-201 unconstitutional."); Jefferds v. Ellis , 122 A.D.2d 595, 596, 505 N.Y.S.2d 15, 15 (N.Y. App. Div. 1986) ("Special Term erred in determining sua sponte the constitutionality of Sections 9-503 and 9-504 of the Uniform Commercial Code without complying with the mandates of CPLR 1012(b), which requires a court in such instances to notify the Attorney General to give him an opportunity to be heard in support of said statute's constitutionality.").

For example, one basis relied upon by Judge Delahanty to strike down KRS 186.574(6) was the fact that there is not a process in place for indigent traffic offenders to seek a fee waiver. The record on this issue is basically nonexistent. It consists of the County Attorney's response in a hearing that one indigent person was given a fee waiver. There was no evidence presented that any other person sought a waiver. Moreover, there is nothing in the record concerning whether fee waivers are granted in the other counties that have similar programs. Important issues like equal protection and due process should not be decided based on the type of speculation and conjecture that the district court engaged in the cases that were before it. Additionally, while it might be unconstitutional for the County Attorney to refuse to grant a fee waiver to an indigent person, this type of challenge would be one to the statute and DSL program "as applied." An indigent person who was denied a fee waiver could petition the district court for relief. The fact that no such person has done so to date is not a legally justifiable reason to strike the entire enabling statute and the DSL program on constitutional grounds. If an indigent person is denied access to the DSL program, he or she can petition the district court for relief. "It should be no great burden for a court to make such indigency determinations in pretrial diversion cases, should a prosecutor not exercise his or her discretion independently to waive payment of any or all fees without court involvement."Mueller v. State , 837 N.E.2d 198, 205 (Ind. Ct. App. 2005).