RENDERED: JANUARY 26, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1211-MR

MICHAEL THOMPSON                                          APPELLANT

|       | APPEAL FROM NELSON CIRCUIT COURT |
|-------|----------------------------------|
| v.    | HONORABLE CHARLES C. SIMMS, III, JUDGE |
|       | ACTION NO. 16-CI-00167 |

SARAH THOMPSON (NOW RIVES)                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND EASTON, JUDGES.

CALDWELL, JUDGE:  Michael Thompson appeals from an order of the Nelson Circuit Court which *sua sponte* deleted a make-up time provision in a timesharing agreement.  We affirm.

Michael and his ex-wife Sarah Thompson (now Rives) are the parents of a minor child (Child).  When Michael and Sarah divorced, they agreed to share joint custody of Child.  However, Child would primarily reside with Sarah and

would spend "liberal and mutually agreed upon" time with Michael. The trial court incorporated the agreement into the 2016 decree of dissolution. Michael filed a motion in 2021 to modify parenting time to a week on/week off schedule. The terms *parenting time*, *timesharing*, and *visitation* are, for purposes of this appeal, functionally "synonymous . . . ." FCRPP[1] 1(6). *See also Layman v. Bohanon*, 599 S.W.3d 423, 429 (Ky. 2020).

Michael and Sarah eventually agreed to continue joint custody but change to a fixed 2/2/3 timesharing schedule whereby Child would spend two days with Michael, three with Sarah then two with Michael one week with the parenting times reversed the next week. The net effect was that Michael and Sarah would have equal time with Child. The agreed order also contained this make-up provision: "If either party is unable to exercise their days of parenting time during a given month, said party shall be entitled to <u>one</u> (1) make-up day on a mutually agreed upon date within thirty (30) days." The trial court incorporated the agreement, including the make-up provision, into an order.

Less than a year later, Michael filed a motion asking the court to hold Sarah in contempt for not allowing him to have make-up parenting time. Michael also sought to change the 2/2/3 timesharing method to a week on/week off system to better accommodate his work obligations. After holding an evidentiary hearing,

---

[1] Kentucky Family Court Rules of Procedure and Practice.

the trial court denied Michael's request to hold Sarah in contempt and declined to change the 2/2/3 format. In its order, the court *sua sponte* eliminated the make-up day provision because it was "causing unnecessary friction and litigation."

Michael filed a motion to alter, amend, or vacate pursuant to CR[2] 59.05, correctly noting that "[n]either party requested the removal of that [make-up] provision at the hearing . . . ." The trial court denied Michael's CR 59.05 motion, concluding that eliminating the make-up provision was in Child's best interests because doing so would help eliminate friction between Michael and Sarah. Michael then filed this appeal. The only issue before us is whether the trial court erred by *sua sponte* deleting the make-up time provision.

That lone issue requires us to engage in a two-step analysis. First, we must determine whether the trial court had the power to delete *sua sponte* the make-up provision. If not, the deletion obviously must be reversed. But, if so, we must then determine whether this specific *sua sponte* act was supported by substantial evidence. We conclude, under these facts, that the court had the ability to act *sua sponte* and its *sua sponte* act is supported by substantial evidence.

As to the trial court's ability to modify the timesharing agreement *sua sponte*, we begin by noting that the parties have not cited, nor have we independently located, published precedent which directly addresses this issue.

---

[2] Kentucky Rule of Civil Procedure.

We reversed a *sua sponte* modification of timesharing in *Roper v. Roper*, 594 S.W.3d 211, 224-25 (Ky. App. 2019), *as modified* (Jan. 17, 2020). But our holding was based wholly on jurisdictional grounds: "At the time the trial court entered the supplemental decree and *sua sponte* addressed the timesharing issue, the children and their parents had been living in Texas for approximately one year. Accordingly, the trial court lacked jurisdiction to modify custody or parenting time." *Id.* at 225. We did not discuss whether the trial court had the authority to modify timesharing *sua sponte* when it has jurisdiction. There are no jurisdictional issues in the case at hand. Consequently, *Roper* is materially distinguishable.

KRS[3] 403.320(3) governs modifications of timesharing. That subsection provides that "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." Notably, there is no language in that unambiguous statute which premises a timesharing modification upon the filing of a motion. "[W]hen the statute is unambiguous, courts are not free to insert words or add a provision even if it may be just or desirable to do so." *Lee v. Kentucky Department of Corrections*, 610 S.W.3d 254, 262 (Ky. 2020).

---

[3] Kentucky Revised Statute.

Nor may we deem the absence of such language to have been accidental. The General Assembly has often enacted statutes which purport to restrict a court from granting relief unless a motion seeking that relief has been filed. We will not belabor this Opinion by citing all those statutes, but we do note that some of them are in the domestic relations context. For example, KRS 403.213(1) provides in relevant part that "any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification . . . ." We faithfully enforced that statutory language, holding that "a written motion for modification is required before a trial court may change a child support award." *Holland v. Holland*, 290 S.W.3d 671, 675 (Ky. App. 2009).

The takeaway is that the General Assembly's omission of language from KRS 403.320(3) conditioning modification of visitation upon the filing of a motion was intentional. We cannot conclude that the General Assembly merely forgot to add a motion requirement to modify child visitation when it put that same requirement in the statute regarding modifying child support. As a leading treatise on statutory construction notes: "when the legislature uses a term or phrase in one statute or provision but excludes it from another, courts do not imply an intent to include the missing term in that statute or provision where the term or phrase is excluded." 2A Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 47:38 (7th ed. 2022).

In sum, "we assume that the Legislature meant exactly what it said, and said exactly what it meant." *Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 798 (Ky. 2020) (internal quotation marks and citation omitted). And the General Assembly did ***not*** say that a motion must be filed before a court may modify visitation. We must respect that silence.

Although unpublished and not binding, our conclusion aligns with our opinion in *Dodd v. Lococo*, No. 2018-CA-001880-ME, 2019 WL 5290229 (Ky. App. Oct. 18, 2019). In *Dodd*, during a hearing on a motion for contempt "[i]t became clear . . . that the family court intended to resolve what it perceived as the underlying problem, which was the ongoing intractable conflict stemming from the parties' inability to compromise in following the timesharing schedule." *Id.* at *4. The court thus modified the parenting schedule, despite not having been asked to do so. We affirmed because "the family court provided the parties an adequate and meaningful opportunity to be heard before modifying the schedule . . . ." *Id.* at *5.

The same conclusion holds true here as the court held an evidentiary hearing on modification of timesharing, at which evidence was presented regarding the friction caused by the make-up provision. Better practice may have been for the trial court to have explored at the hearing whether eliminating the make-up provision was warranted. However, Michael has not shown that the court was

required to do so or that the court's deletion of the make-up time provision on its own accord was inherently improper.

We are aware that we generally cautioned trial courts to avoid ruling *sua sponte* on important matters wholly unrelated to the questions presented by the parties in *Delahanty v. Commonwealth*, 558 S.W.3d 489, 503 (Ky. App. 2018).[4] But here, Michael asked the court to modify timesharing by requesting a change to a week on/week off approach. Thus, whether to modify timesharing was squarely before the court, and so the modification is not an improper *sua sponte* ruling on an issue unrelated to those raised by the parties.

Having concluded the trial court had the ability to modify its order adopting the visitation agreement *sua sponte*, we turn to whether the specific modification is supported by substantial evidence. KRS 403.320(3) provides that a court "may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child . . . ." To assess a child's best interests, the court "must consider all relevant factors," which include:

> the wishes of the child's parents; the wishes of the child
> as to his custodian; the interaction and interrelationship
> of the child with his parents, his siblings, and any other
> person who may significantly affect the child's best
> interests; the child's adjustment to his home, school, and

---

[4] Of course, a court may address some jurisdictional issues *sua sponte*. *Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 47 (Ky. 1996) ("it is important to note that defects in subject matter jurisdiction may be raised by the parties or the court at any time and cannot be waived.").

community; the mental and physical health of all
individuals involved.

*A.G. v. T.B.*, 452 S.W.3d 141, 144 (Ky. App. 2014). Of course, many of those
factors are not relevant to the decision to eliminate the make-up day clause.

A trial court "has broad discretion in modifying timesharing."
*Layman*, 599 S.W.3d at 431. Therefore, we may disturb a trial court's decision
only if it is "a manifest abuse of discretion" or was "clearly erroneous in light of
the facts and circumstances of the case." *Layman*, 599 S.W.3d at 431 (internal
quotation marks and citations omitted). As our Supreme Court has explained,
"[t]he test is not whether we as an appellate court would have decided the matter
differently, but whether the trial court's rulings were clearly erroneous or
constituted an abuse of discretion." *Moore v. Moore*, 626 S.W.3d 535, 539 (Ky.
2021).

The trial court's decision was amply supported by the evidence
presented at the hearing. First, at its core, the make-up provision lay at the heart of
the hearing because Michael sought to have Sarah held in contempt for not
allowing him to make up parenting time he missed.

Second, there was extended testimony at the hearing about the
difficulties caused by the make-up provision. Michael and Sarah testified about
the problems that had been caused by them trying to agree on make-up days. In
fact, early in his testimony Michael alleged that "from the very beginning" Sarah

made it "almost impossible to get a make-up day."  Michael also testified that Child had begun seeing a therapist, due seemingly at least in part to being aware of the escalating disharmony between Michael and Sarah – which, in turn, was due in large part to their inability to agree on utilization of the make-up day provision.

In sum, the trial court's finding regarding conflict caused by the make-up day provision was amply supported by the evidence, and the court sufficiently explained its rationale.  In fact, in its order denying Michael's CR 59.05 motion, the court stated that its decision to delete the make-up time provision was based upon "consideration of the evidence submitted at the hearing" which made it "quite obvious that this make-up day was causing unnecessary friction and litigation."  Perhaps the trial court could have explained precisely in more detail which evidence it believed was most pertinent, but the court's bottom-line decision was sufficiently based on the testimony presented at the hearing.

As we have stressed, albeit in a different context, the "overriding principle" in domestic relations litigation involving children is that a child's best interests "must be served by the family court's decision."  *Burch v. Lipscomb*, 638 S.W.3d 460, 462-63 (Ky. App. 2021).  The decision here was based on evidence and logically aimed at furthering Child's best interest by reducing a consistent source of friction between Michael and Sarah, so we must affirm it.

Finally, we reject Michael's argument that Sarah cannot defend the trial court's decision on appeal because she testified that she did not want to amend the timesharing agreement. Michael is correct to the limited extent that Sarah testified that she preferred to keep the timesharing agreement. However, Michael does not acknowledge the underlying rationale for, and context of, Sarah's testimony. When given the choice between keeping the current 2/2/3 approach or switching to the week on/week off approach sought by Michael, Sarah explained why she preferred to continue with the 2/2/3 system.

In any event, we have already determined that the trial court had the ability to *sua sponte* delete the make-up provision and that its decision to do so is supported by substantial evidence. Accordingly, Sarah's testimony about preferring to keep the timesharing agreement "as is" did not prevent the trial court from deleting the make-up provision on its own initiative.

For the foregoing reasons, the Nelson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Elmer J. George
Lebanon, Kentucky

BRIEF FOR APPELLEE:

Jason P. Floyd
Bardstown, Kentucky