Garry W. NEWKIRK, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2014–SC–000749–DG

Supreme Court of Kentucky.

DECEMBER 15, 2016

COUNSEL FOR APPELLANT: Daniel T. Goyette, Elizabeth B. McMahon, Office of the Louisville Metro Public Defender

COUNSEL FOR APPELLEE: Andy Beshear, Attorney General of Kentucky, Dorislee J. Gilbert, Special Assistant Attorney General

## OPINION OF THE COURT BY JUSTICE VENTERS

After receiving two unfavorable pretrial rulings, the Commonwealth moved the trial court to dismiss this case. The trial court granted the motion and dismissed without prejudice. At the prosecutor's request, the trial court also included in the written order of dismissal a recitation of the two pretrial rulings that had prompted the Commonwealth's motion to dismiss. The Commonwealth appealed from the order of dismissal asserting that the trial court's two pretrial rulings were erroneous. The Court of Appeals sustained the Commonwealth's position and reversed the dismissal.[1]

We granted the motion of Appellant Garry Newkirk for discretionary review of the Court of Appeals' decision. For the reasons stated below, we conclude that the Commonwealth had no right to appeal the order of dismissal. Consequently, we vacate the decision of the Court of Appeals and dismiss the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When Pearlette Isaac's apartment was burglarized, suspicion first focused on an acquaintance named Daniel Newkirk, but the evidence quickly pointed in the direction of Daniel's brother, Appellant Garry Newkirk. That evidence included video recordings from security cameras situated in Isaac's apartment building and a nearby gas station. Eventually, Appellant was indicted for the burglary.

On the morning of his trial and before the swearing of the jury, Appellant moved *in limine* to exclude from the evidence any testimony about the apartment building video because the Commonwealth had failed in discovery to provide Appellant with a copy of it. The Commonwealth then disclosed that the video recording no longer existed because it had not been retrieved in time to prevent the surveillance system from automatically recording over it. In place of the actual video recording, the Commonwealth planned to present the testimony of a police detective who had watched the video and would describe its images to the jury. Appellant objected to that testimony. The trial court ruled that testimony describing the scenes depicted in the burglary video could not be introduced at trial.

The Commonwealth intended to call Daniel Newkirk as a witness to testify against Appellant but was never able to serve him with a subpoena. He was not present for the trial and so the Commonwealth moved for a continuance. When the trial court denied the continuance, the Commonwealth promptly moved to dismiss the case without prejudice, and the trial court obliged. The trial court's order of dismissal was entered, and at the Commonwealth's request, it also memorialized the earlier rulings that excluded testimony describing the apartment video and denied

---

1. Although the Court of Appeals opinion does not expressly remand the case to the trial court, we presume the intended effect of reversing an order of dismissal is to reinstate the original action in the trial court.

the requested continuance. The Commonwealth appealed from that order, seeking appellate review of the pretrial rulings.

The Court of Appeals concluded that the trial court had erroneously ordered the exclusion of the proffered testimony describing the contents of the missing video. That determination led the Court of Appeals to reverse the order of dismissal.[2]

We granted discretionary review. Although not initially asserted by the parties, the overarching question before this Court is whether the Commonwealth could appeal the interlocutory rulings of the trial court *after* its own voluntary motion to dismiss the action was granted by the trial court. The primacy of this issue was immediately apparent to this Court, and although it was not briefed by the parties prior to the oral arguments, supplemental briefs were later submitted to address it.

## II. ANALYSIS

■ The Commonwealth appealed the order of dismissal to obtain appellate review of the two adverse and clearly interlocutory pretrial rulings of the trial court. Black's Law Dictionary defines "interlocutory order" as "[a]n order that relates to some intermediate matter in the case; any order other than a final order." *Black's Law Dictionary* order (10th ed. 2014). As a general rule, interlocutory orders are not appealable. But there are exceptions to the rule and in *Commonwealth v. Farmer*, 423 S.W.3d 690, 692–94 (Ky. 2014), we rather extensively detailed the provisions of KRS 22A.020 relating to the jurisdiction of the Court of Appeals with respect to interlocutory appeals in criminal cases.

The Court of Appeals is not granted jurisdiction generally over interlocutory appeals in criminal cases, subject to this

Court's rules or otherwise. Instead, the statute states the Commonwealth may appeal from an 'adverse decision or ruling' of the circuit court and proceed 'in the manner' provided for by this Court in our criminal rules or Supreme Court rules.

*Id.* at 694 (quoting KRS 22A.020(4)(a)).

■ The Commonwealth contends that its appeal from the circuit court was authorized by the plain language of KRS 22A.020(4)(a), which provides: "An appeal may be taken to the Court of Appeals by the state in criminal cases from an adverse decision or ruling of the Circuit Court, but only under the following conditions: (a) Such appeal shall not suspend the proceedings in the case." The problem with the Commonwealth's argument is that it did not appeal from the interlocutory rulings. Instead, to avoid having to try the case with a missing witness and without testimony describing the scene depicted on a missing video, the Commonwealth asked for and received an order dismissing the case. The order of dismissal was not an interlocutory order, and it was not "an adverse decision or ruling" referred to in KRS 22A.020(4)(a). There is no doubt that a dismissal of a criminal case without prejudice is a final order. *Commonwealth v. Sowell*, 157 S.W.3d 616 (Ky. 2005).

■ We have a well-settled and longstanding rule that one may only seek appellate review of an involuntary adverse judgment. "The universal rule regulating the right of appeal is that it will not lie in favor of one unless there has been an involuntary adverse judgment against him. *If the judgment appealed [ ] from was rendered at his instance, upon his motion, or by his consent, he will not be allowed to complain of it on appeal ...*" *Taylor v.*

---

**2.** Having reversed on other grounds, the Court of Appeals deemed the trial court's refusal to grant a continuance to be a moot issue.

*Slider*, 185 Ky. 756, 215 S.W. 827, 828 (1919) (emphasis added); *accord Powers v. Louisville Trust Co.*, 282 Ky. 499, 138 S.W.2d 977, 977 (1940). "A party consenting to a judgment is conclusively presumed to have waived all errors, except those going to the court's jurisdiction." 4 C.J.S. *Appeal and Error* § 281 (2016) (citations omitted). As stated in *Taylor*,

> But even if the decision of the [trial] court had been erroneous, the plaintiff cannot now make the objection. Having submitted to a [dismissal], which he was not bound to do, he has abandoned his cause; and therefore cannot avail himself of an objection to the opinion of the court with regard to evidence.

*Id.* at 828 (quoting *Watson v. Anderson*, 3 Ky. 458, 467–68 (1808)).[3] The rules as just described apply with equal force to the Commonwealth in its prosecution of a criminal case.

 The dismissal of the case at the behest of the Commonwealth dismissed the indictment pending against Appellant, discharged him from custody (or the obligations of his bond), and terminated the litigation. At that moment, any difficulty imposed by the two pretrial rulings became moot. There was no case to be tried; the propriety of the trial court rulings on the continuance and the video testimony were irrelevant to any actual case or controversy and instead were simply matters for academic discourse.

A case becomes moot as a result of a change in circumstances which vitiates the underlying vitality of the action. In such an action, a judgment when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy. This Court, of course, does not have authority to settle arguments or differences of opinion. As we often say, we do not render purely advisory opinions.

*Commonwealth v. Terrell*, 464 S.W.3d 495, 498–99 (Ky. 2015) (internal quotations and citations omitted).

 The dismissal of the case was a change in circumstances that "vitiate[d] the underlying vitality of the action" rendering all underlying issues moot. After the dismissal of the case against Appellant, any judicial opinion on the pretrial rulings would have been purely advisory because it could have no effect upon any *"then* existing controversy." As previously noted, "[o]ur courts do not function to give advisory opinions, even on important public issues, unless there is an actual case in controversy." *Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992).[4]

The Commonwealth argues that the issues are not moot because the Commonwealth may obtain a new indictment against Appellant. That possibility is only speculative at this point. Based upon the

---

**3.** We acknowledge a narrow exception to the rule stated in *Taylor v. Slider* but we find it to be inapplicable here. One may appeal from a voluntary dismissal only when consent to the dismissal is based upon an adverse ruling that bars recovery as a matter of law or is otherwise completely dispositive of the case. A voluntary dismissal in such circumstances may be regarded as involuntary for purposes of appellate review. *See Taylor*, 215 S.W. at 828, 829. While the pretrial rulings here may have made it more difficult for the Commonwealth to prosecute its case, neither was shown to have barred the Commonwealth's cause as a

matter of law or to have been otherwise completely dispositive.

**4.** We take note of the two exceptions to the mootness doctrine detailed in *Morgan v. Getter*, 441 S.W.3d 94, 102 (Ky. 2014): the two-element "capable of repetition" exception and the three-element "public interest" exception. The evidentiary issue for which the Commonwealth seeks appellate review does not present the concerns essential for the invocation of either exception.

record, there is only the potential of a new indictment, and the issue to be addressed has no immediate practical application outside the context of this case. If Appellant is reindicted, the issue can be revisited in due course by the trial court in the context of an actual pending case.

The Commonwealth directs our attention to the opinions of the Court of Appeals in *Commonwealth v. Blincoe*, 33 S.W.3d 533 (Ky. App. 2000) (*Blincoe I*) and *Commonwealth v. Blincoe*, 34 S.W.3d 822 (Ky. App. 2000) (*Blincoe II*) as precedent for appellate review of pretrial rulings despite dismissal of the underlying case. The *Blincoe* cases arose from a criminal case pending in the Jefferson Circuit Court in which the trial court entered a pretrial ruling on an evidentiary issue adverse to the Commonwealth, and the Commonwealth promptly took an interlocutory appeal pursuant to KRS 22A.020. While the interlocutory appeal was pending before the Court of Appeals, the trial court ordered that unless the Commonwealth moved the case to trial within 60 days, the case would be dismissed. When the Commonwealth made no effort to try the case, the trial court dismissed the case without prejudice. From that order of dismissal the Commonwealth appealed. In that appeal, *Blincoe I*, the Commonwealth argued that the trial court lacked jurisdiction to dismiss the case while the interlocutory appeal was pending. *Blincoe I* rejected that argument, holding that pursuant to KRS 22A.020(4)(a) ("Such appeal shall not suspend the [trial court] proceedings in the case."), the trial court retained jurisdiction to proceed during the pendency of the interlocutory appeal, and its continuing jurisdiction included the authority to dismiss the case. 33 S.W.3d at 535. The Court of Appeals subsequently decided *Blincoe II*, the case initiated as an interlocutory appeal.[5]

The Commonwealth contends the *Blincoe* cases demonstrate the propriety of an interlocutory appeal despite the dismissal of the underlying case. That argument is unpersuasive because of two important factual differences. First, the interlocutory appeal in *Blincoe II* was taken before the case was dismissed. When the Court of Appeals acquired jurisdiction pursuant to the notice of appeal, the underlying action was still alive and justiciable. In contrast, the instant case was terminated by the dismissal *before* any effort to appeal the interlocutory rulings was undertaken. Second, but of equal significance, the dismissal of the underlying case in *Blincoe I* was opposed by the Commonwealth, so the Commonwealth was appealing from a genuinely adverse order entered against its will. Here, the Commonwealth actively requested the dismissal which the trial court granted. The order of dismissal granted the Commonwealth exactly what it asked for and cannot be regarded as an order adverse to the Commonwealth from which an appeal may be taken. *See Taylor v. Slider*, 185 Ky. 756,215 S.W. 827.[6]

---

5. In *Blincoe II*, the Court of Appeals decided the substantive issue raised in the interlocutory appeal. It is not clear whether the question of mootness could have been invoked in *Blincoe II*. The opinion makes no mention of mootness so it appears that the issue was never presented or addressed by the parties and was not considered by the court. Accordingly, the case has no precedential value concerning the mootness issue we address.

6. The parties also direct our attention to two conflicting unpublished opinions of the Court of Appeals: *Commonwealth v. Robinson*, 2015 WL 7068143 (Ky. App. Nov. 13, 2015), in which the Commonwealth's interlocutory appeal following a voluntary dismissal without prejudice was not dismissed; and *Commonwealth v. Henderson*, 2004 WL 224266 (Ky. App. Feb. 6, 2004), in which the Commonwealth's appeal following a voluntary dismissal without prejudice was dismissed as being

The Commonwealth suggests that its decision to voluntarily dismiss the underlying criminal case provided for a more efficient and economical disposition than other available options, such as a writ of prohibition or mandamus to stay the proceeding during the pendency of the interlocutory appellate review of the trial court's evidentiary rulings. Those options for extraordinary relief are available but would, of course, face the uphill battle of overcoming the explicit provision of KRS 22A.020(4)(a) which leaves the matter in the discretion of the trial court. We are not persuaded by the argument. The route chosen by the Commonwealth to overcome the trial court's ruling evades the sound, well-settled, and universally applied principles regarding advisory opinions, mootness of issues, and the appealability of favorable rulings. We are not inclined to open a path that would diminish those important policies. Accordingly, we conclude that the entry of the order of dismissal rendered the interlocutory rulings of the trial court moot, and the Commonwealth had no right to appeal from the order of dismissal granted in its favor and at its own request.

## III. CONCLUSION

For the reasons set forth above, the Court of Appeals' decision in this matter is vacated and the Commonwealth's appeal is dismissed.

All sitting. Minton, C.J.; Hughes, Noble, and Wright, JJ., concur. Cunningham, J., concurs by separate opinion in which Keller, J., joins.

CUNNINGHAM, J., CONCURRING: I concur fully with the Majority.

Being empathetic with the predicament of the Commonwealth in this case, I wish to write further.

There were options to the time consuming and unproductive course followed in this case. We recognize that here the prosecutor was left with no choice but to move to dismiss the indictment, once it was apparent that going forward was futile. Not only can going forward be futile in this type of situation, it can be fatal to the case. Jeopardy would bar a subsequent trial if the defendant is either acquitted or the action dismissed on directed verdict.

But once the indictment is dismissed pursuant to the Commonwealth's request, as here, the prosecutor has two choices. He or she can carefully evaluate the case and decide whether to proceed with the prosecution or decline. If it is decided to proceed, then a new indictment must be obtained. Immediately and before a trial date is set, a motion in limine will once again get the controversial issues before the trial court for a formal ruling. If an adverse ruling is once again the result, an extraordinary remedy must be sought by an appeal to a higher court for a writ.

I dare not venture into the merits of such an effort in this case, as it would be both premature and inappropriate. But procedurally it would appear to me that is the proper course for prosecutors to take when confronted with such a dilemma.

Keller, J., joins.

---

improperly taken. We cite neither as authority for this opinion but obviously we reach the

same result reached by the *Henderson* court.