RENDERED: APRIL 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1084-MR

ONYINYECHI R. URADU, MD                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NO. 19-CI-008051


KENTUCKY BOARD OF MEDICAL                                    APPELLEE
LICENSURE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, JONES, AND KRAMER, JUDGES.

KRAMER, JUDGE: Onyinyechi Uradu, MD, appeals from an order of the

Jefferson Circuit Court that affirmed in part and modified in part a final order of

the Kentucky Board of Medical Licensure ("KBML") imposing disciplinary

sanctions upon Dr. Uradu. We affirm.

This matter has a long and complicated factual and procedural history,

previously summarized, in part, by this Court:

The underlying matter began with the filing of a complaint by KBML on March 8, 2017, against Dr. Uradu related to her license to practice medicine in Kentucky. Her specialty is Family Medicine. In 2016, the equivalent licensure board in Ohio entered an order related to her license in that state for her actions in 2014. The Ohio Board concluded that between September 23, 2014, and September 26, 2014, Dr. Uradu had "knowingly exceeded the 100-patient limit set by federal law in prescribing buprenorphine for the treatment of narcotic addiction." For this violation, the Ohio Board suspended her license for an indefinite period not less than 180 days and stayed all but five days of that suspension, subjected her to a one-year probation period upon the reinstatement of her license, and required her to submit documentation of her successful completion of a course related to prescribing controlled substances. KBML alleged in the complaint that through this conduct, Dr. Uradu had violated KRS[1] 311.595(17) and that legal grounds existed for a disciplinary action in Kentucky. The matter was assigned to Hearing Officer Thomas J. Hellman.

In her response to the complaint, Dr. Uradu admitted that the Ohio Board had entered an order on September 14, 2016, related to her license to practice medicine and that she had reported this order to KBML pursuant to the statutory and regulatory requirements. She admitted that she had exceeded the 100-patient limit, but she denied that the Ohio Board's order imposed any substantive restrictions on her ability to serve in her position as an Opioid Treatment Program Director, to prescribe medication, or limited her practice. She had also completed the required course in controlled substances prescriptions. As one of her defenses, Dr. Uradu stated that the "actions that precipitated the Ohio Board's Entry of Order were actions taken for the safety, health, welfare and best interests of her patients and lasted only a very

_____

[1] Kentucky Revised Statute.

-2-

short time until the patients could be transferred." She also stated that the Drug Enforcement Administration (DEA) and the Substance Abuse and Mental Health Services Administration (SAMHSA) had increased the patient limits from 100 to 275, removing the basis for the Ohio Board's disciplinary action and providing no basis for further action in Kentucky. Finally, Dr. Uradu stated that the KBML had discriminated against her by failing to take similar disciplinary action against other physicians. She sought dismissal of the complaint and a declaration that the statutes and regulations as applied to her were unconstitutional.

KBML moved the hearing officer for summary disposition pursuant to 201 Kentucky Administrative Regulations (KAR) 9:081 § 9(6) and KRS 13B.090(2), arguing that no genuine issues of material fact were in dispute in that Dr. Uradu had admitted the allegations contained in paragraphs 1 through 5 of the complaint. KRS 311.595(17) permits the KBML to place a licensee on probation or to revoke or restrict a license based upon proof that the licensee had been subjected to a revoked, suspended, restricted, or limited license by the licensing authority in another state. Re-litigation of the disciplinary action is not required under this statute. In addition, 201 KAR 9:081 § 9(4)(c) requires the appropriate panel in Kentucky to impose the same substantive sanction as the discipline that was imposed in another state. By separate regulation (201 KAR 9:081 § 9(6)(a)), KBML is to expedite resolution of the complaint if it only charges a criminal conviction or disciplinary sanction that could be proven by accompanying official certification. And, like the statutory provision, 201 KAR 9:081 § 9(6)(c)(1) does not permit re-litigation of a criminal conviction or disciplinary sanction. KBML included certified copies of the Ohio Board's records related to its discipline of Dr. Uradu.

In her response, Dr. Uradu objected to the motion for summary disposition, arguing that 201 KAR 9:081 §

9(4)(c) was "illegally contrived" because it exceeded its statutory authority, that KRS Chapter 13A forbade KBML from enlarging its delegated authorization in an administrative regulation, and that her due process rights were being denied because she was subjected to re-punishment in Kentucky. Dr. Uradu also sought a hearing on her complaint, stating that genuine issues of material fact existed and that the Ohio certified documents were incomplete because a written copy of the amended final report/recommendation/order had not been included. She also wanted to update KBML on what had transpired since the Ohio Board action and provide an impact statement, not re-litigate the Ohio disciplinary process.

The hearing officer entered his findings of fact, conclusions of law, and recommended order on May 24, 2017, and in doing so found no disputed issues of material fact existed and granted KBML's motion for summary disposition. Based upon his findings, the hearing officer concluded that KBML had established by a preponderance of the evidence that Dr. Uradu had violated KRS 311.595(17) and was subject to sanction based upon the Ohio Board's order. The hearing officer rejected Dr. Uradu's arguments related to 201 KAR 9:081 § 9(4)(c), stating that the regulation was within KBML's discretion, and declined to address the constitutionality of KRS 311.595(17), although he did point out that KBML was not sanctioning her for a violation of an Ohio statute but for violating one in Kentucky. Furthermore, the amended report Dr. Uradu had attached to her filing was not certified or authenticated. Accordingly, the hearing officer recommended that KBML impose, at a minimum, the same sanctions against Dr. Uradu's medical license as the Ohio Board had imposed.

Dr. Uradu filed exceptions to the hearing officer's recommendations, arguing that she was denied due process and that he had limited KBML's statutory duty to

-4-

exercise its discretion in disciplining her. She attached a personal statement dated June 7, 2017, in which she sought mercy and requested that KBML not penalize her any further. She also attached a letter and decision from the West Virginia Board of Medicine declining to find probable cause existed to initiate a complaint against her. Both of these documents, she asserted, supported her argument that the use of summary disposition prejudiced her interests.

On July 24, 2017, after considering the complaint, the hearing officer's recommendations, Dr. Uradu's exceptions, and a memorandum from KBML's counsel, KBML adopted the hearing officer's findings of fact and conclusions of law as well as his recommended order. It therefore placed Dr. Uradu's license to practice medicine in Kentucky on probation for one year; stayed the indefinite suspension of her license; and ordered her to submit proof that she had complied with the Ohio Board's requirement that she complete a course related to prescribing controlled substances, reimburse KBML for the cost of the proceedings, and not violate any provision of KRS 311.595 and/or KRS 311.597.

*Uradu v. Kentucky Board of Medical Licensure*, No. 2018-CA-0097-MR, 2019 WL 847696, at *1-2 (Ky. App. Feb. 22, 2019), *discretionary review denied* (Aug. 21, 2019).

After issuance of the July 24, 2017 order by KBML, Dr. Uradu petitioned the Jefferson Circuit Court for judicial review, and the circuit court affirmed KBML's order. Dr. Uradu appealed to this Court, which ultimately held that KBML's reliance on 201 KAR 9:081 § 9(4)(c) was improper because the regulation "invalidly exceed[ed] the grant of authority set forth in KRS

-5-

311.595(17) in that the regulation requires KBML to mandatorily impose the same substantive sanction imposed in another state, while the statutory language is permissive and therefore grants discretion to KBML." *Uradu*, 2019 WL 847696 at *5. The order of the Jefferson Circuit Court was reversed, and the matter was remanded for further proceedings, including vacating the order of probation entered by KBML.

On remand, Hearing Panel B of KBML met in executive session and issued a new final order regarding disciplinary action against Dr. Uradu's medical license on November 22, 2019. Per instructions from this Court, the final order omitted language regarding 201 KAR 9:081 § 9(4)(c), but imposed the following terms and conditions: (1) Dr. Uradu's license to practice medicine was placed on probation for a period of one year; (2) Dr. Uradu must provide proof she completed the course(s) dealing with prescribing of controlled substances as required by the State of Ohio's Medical Board; (3) reimbursement of costs of the proceedings to KBML; (4) no violations of KRS 311.595 and/or KRS 311.597.

Dr. Uradu again petitioned the Jefferson Circuit Court for judicial review of KBML's final order. The parties submitted briefs, oral arguments were held, and the circuit court entered an order affirming KBML's final order in part

but modified it to remove the additional one-year term of probation imposed on Dr. Uradu.[2]  This appeal followed.

The portion of KBML's final order imposing an additional one-year term of probation was removed by the circuit court, leaving only the requirements that Dr. Uradu show proof of completion of the course(s) mandated by Ohio's Medical Licensure Board; reimburse costs of the proceedings to KBML; and have no violations of KRS 311.595 and/or KRS 311.597.  Indeed, Dr. Uradu acknowledges that the circuit court's "sense of justice was 'spot on.'"[3]  She acknowledges she had already provided proof of completion of the mandatory course(s) prior to the issuance of the final order, and this is not disputed by KBML. Dr. Uradu makes no discernable argument regarding reimbursement of costs to KBML as she mentions it only in passing in her brief with no citations to the record or any authority.[4]

---

[2] Dr. Uradu had already been subject to at least one year of probation from the original order entered on July 24, 2017.  KBML did not appeal the circuit court's ruling.

[3] *See* page 19 of Appellant's brief.

[4] On page 14 of Dr. Uradu's brief to this Court, she states only that "[i]t should be noted that *nowhere* in the administrative record—either the current one or the prior one—is there any evidence in the 'record' to support the demanded requirement to pay the KBML's 'costs.' Moreover, the first Order of Probation from which that number derives was 'vacated' by the Court of Appeals and has no effect.  By foolishly adopting the Hearing Officer's original recommendation—which relied upon an invalid regulation—there is still no mention of the calculation or the imposition of these 'costs.'"  (Emphasis in original.)

Dr. Uradu's primary argument is that she was denied due process because she believes she was entitled to an administrative hearing before Hearing Panel B on remand. Yet, this argument is without basis in the law. KRS 311.565(1)(g) and KRS 311.591(5) authorize the hearing panel to appoint a hearing officer, which was done in Dr. Uradu's case. KRS 13B.080 details how an administrative hearing is to be conducted by a hearing officer. Summary disposition was utilized by the hearing officer upon motion of KBML pursuant to KRS 13B.090(2), which allows for submission of evidence in writing and states – in relevant part – that the hearing officer "may make a recommended order in an administrative hearing submitted in written form if the hearing officer determines there are no genuine issues of material fact in dispute and judgment is appropriate as a matter of law." Further, KRS 311.595(17) provides appropriate disciplinary measures to be taken against any medical licensee who has "[h]ad his license to practice medicine or osteopathy in any other state, territory, or foreign nation revoked, suspended, restricted, or limited or has been subjected to other disciplinary action by the licensing authority thereof." The statute further provides that re-litigation of the disciplinary action taken in another state is not required by KBML. Accordingly, the hearing officer entered a recommended order in Dr. Uradu's case without taking oral testimony and based upon the written evidence submitted, including Dr. Uradu's admission that the Ohio Board concluded she had

"violated Ohio statute by exceeding the 100-patient limit set by Federal law for prescribing Buprenorphine." Dr. Uradu filed exceptions to the hearing officer's recommended order. In fact, Dr. Uradu concedes that she "was able to submit evidence to show 'her side' of the case which also included the adjudication by the West Virginia Board of Medicine on the same circumstance which took no action against Dr. Uradu's licensure."[5]

Pursuant to statute, after an administrative hearing has occurred, the matter proceeds to the hearing panel for issuance of a final order. In doing so, KRS 13B.120(1) requires the hearing panel to consider only "the record including the recommended order and any exceptions duly filed to a recommended order." The Kentucky Supreme Court has ruled that "requiring the Board conduct a new, independent review of the entire record would render parts of the statutory scheme 'practically superfluous' and the matter 'impractically expensive.'" *Kentucky Board of Medical Licensure v. Strauss*, 558 S.W.3d 443, 447 (Ky. 2018). Other than broad and conclusory statements, Dr. Uradu is unable to cite to any authority to support her argument that she was entitled to be heard by Hearing Panel B outside of the record established before the hearing officer.

---

[5] *See* page 10 of Appellant's brief.

We agree with the circuit court's reasoning in finding that KBML did not err in not allowing Dr. Uradu or her counsel to address the hearing panel before issuance of the final order and incorporate it herein:[6]

> Admittedly, KRS 13B.080(5) allows a party to participate in administrative hearings in person or by counsel, and KRS 13B.010(2) defines an administrative hearing as "any type of formal adjudicatory proceeding conducted by an agency as required or permitted by statute or regulation to adjudicate the legal rights, duties, privileges, or immunities of a named person." Thus, at first blush it would appear that Dr. Uradu should have been allowed to participate in the [hearing] [p]anel's determination as to the sanction to be imposed and issuance of a final order.
>
> However, KRS 13B.080 provides that administrative hearings must be conducted by hearing officers, suggesting that subsequent proceedings by the agency itself in considering a hearing officer's recommended order are not an administrative hearing. Perhaps more significantly, KRS 13B.120 provides that in making a final order, an agency "shall consider the record including the recommended order and any exceptions duly filed to a recommended order." KRS 13B.120(1). Notably, the statute does not provide that the agency is also to consider additional evidence or argument in reaching a decision as to the issuance of a final order. Accordingly, in construing the relevant statutes as a whole, the Court does not find that [KBML's] making of a Final Order was an administrative hearing in which Dr. Uradu was entitled to participate either personally or by counsel. While the Court is sympathetic to Dr. Uradu's basic complaint that she did not have an opportunity to

---

[6] Although we agree generally with the circuit court's reasoning, we do not agree with the circuit court's characterization of its decision on the matter as "a close call" and "by the thinnest of margins." Dr. Uradu's arguments are completely without support in the law.

appear and address the [hearing] [p]anel, the applicable statutes simply do not require the [hearing panel] to allow such participation at that stage of the proceedings[.]

Dr. Uradu's attempts to characterize the proceedings on remand as an "administrative hearing" in order to argue KRS 13B.090(7)[7] is "the focal point of the KBML's systemic misconduct" has no basis in law or the facts of this case.[8] Additionally, this Court did not instruct KBML to conduct an administrative hearing on remand. The case was remanded only due to KBML's improper reliance on 201 KAR 9:081 § 9(4)(c) to mandatorily impose the same sanctions as the Ohio Board, rather than use its discretion as provided in KRS 311.595(17).

We decline to address Dr. Uradu's other arguments. Although she received the relief requested from the circuit court, she continues to argue to this

---

[7] KRS 13B.090(7) states

> [i]n all administrative hearings, unless otherwise provided by statute or federal law, the party proposing the agency take action or grant a benefit has the burden to show the propriety of the agency action or entitlement to the benefit sought. The agency has the burden to show the propriety of a penalty imposed or the removal of a benefit previously granted. The party asserting an affirmative defense has the burden to establish that defense. The party with the burden of proof on any issue has the burden of going forward and the ultimate burden of persuasion as to that issue. The ultimate burden of persuasion in all administrative hearings is met by a preponderance of evidence in the record, except when a higher standard of proof is required by law. Failure to meet the burden of proof is grounds for a recommended order from the hearing officer.

[8] We note that Dr. Uradu characterizes the proceedings before Hearing Panel B on remand as an administrative hearing on page 9 of her brief, but then argues that there was no administrative hearing on page 12.

-11-

Court that the imposition of probation on remand was improper. She also goes into a lengthy discussion accusing KBML of "misuse of KRS 13B.090(7)" which is wholly inapplicable to the proceedings that occurred on remand from this Court.

There being no merit to Dr. Uradu's arguments, the actual purpose of this appeal appears to be set forth in her reply brief wherein she states that she "undertook this appeal in order to force the KBML to provide appropriate due process to her and *to physicians similarly situated*."[9] Dr. Uradu asks us to generally and broadly "make clear to the KBML" that they must abide by all statutory directives. This Court does not render advisory opinions. *See, e.g.*, *Kentucky High School Athletic Ass'n v. Davis*, 77 S.W.3d 596 (Ky. App. 2002); *Newkirk v. Commonwealth*, 505 S.W.3d 770 (Ky. 2016).

Accordingly, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

J. Fox DeMoisey
Louisville, Kentucky

BRIEF FOR APPELLEE:

Sara Farmer
Louisville, Kentucky

---

[9] *See* page 4 of Appellant's reply brief. (Emphasis added.)