RENDERED: AUGUST 8, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0693-DG

JOHN HURST                                                    APPELLANT

ON DISCRETIONARY REVIEW
v.          FROM NELSON CIRCUIT COURT
HONORABLE CHARLES C. SIMMS, III, JUDGE
ACTION NO. 22-XX-00001

COMMONWEALTH OF KENTUCKY                               APPELLEE

AND

NO. 2022-CA-1273-DG

COMMONWEALTH OF KENTUCKY                    CROSS-APPELLANT

ON CROSS-REVIEW FROM NELSON CIRCUIT COURT
v.          HONORABLE CHARLES C. SIMMS, III, JUDGE
ACTION NO. 22-XX-00001

JOHN HURST                                            CROSS-APPELLEE

OPINION
AFFIRMING APPEAL NO. 2022-CA-0693-DG;
REVERSING AND REMANDING
CROSS-APPEAL NO. 2022-CA-1273-DG

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND L. JONES, JUDGES.

JONES, L., JUDGE: This Court granted motions for discretionary review sought by John Hurst (Appeal No. 2022-CA-0693-DG) and by the Commonwealth (Cross-Appeal No. 2022-CA-1273-DG). Both parties are seeking review of a May 19, 2022 Opinion and Order of the Nelson Circuit Court (Circuit Court) that affirmed the judgment of the Nelson District Court (District Court) (Action Nos. 08-M-0634 and 08-M-0635)[1] as to Hurst's conviction for violating a Nelson County (County) ordinance that prohibited placement of a waterline in the County's right-of-way without an encroachment permit and reversed the District Court's judgment as to Hurst's conviction for violating the same ordinance for placement of a fence line. We affirm Appeal No. 2022-CA-0693-DG and we reverse and remand Cross-Appeal No. 2022-CA-1273-DG.

---

[1] By order entered May 19, 2020, the Nelson Circuit Court ordered the Nelson Circuit Clerk to consolidate Action Nos. 08-M-0634 and 08-M-0635, with 08-M-0635 being the surviving case. However, up to the date of entry of the order consolidating, the clerk maintained separate files which were provided to the Court.

Hurst asserts the Circuit Court erroneously affirmed the District Court's judgment adjudicating that he violated a county ordinance by placing a waterline in the County's right-of-way without an encroachment permit. The Commonwealth, on the other hand, asserts the Circuit Court erred by reversing the District Court's judgment adjudicating that Hurst violated the same county ordinance by placing a fence line in the County's right-of-way without an encroachment permit. We affirm the Circuit Court's May 19, 2022 Opinion and Order affirming the District Court's judgment adjudicating that Hurst violated the county ordinance by placing the waterline in the County's right-of-way without an encroachment permit. We reverse the Circuit Court's May 19, 2022 Opinion and Order reversing the District Court's judgment adjudicating that Hurst had also violated the county ordinance as to the fence line, and we remand for the Circuit Court to reinstate the judgment of the District Court adjudicating Hurst guilty of violating the ordinance for placing both the waterline and the fence line in the County's right-of-way without an encroachment permit.

## **RELEVANT BACKGROUND**

The underlying facts of the motion and cross-motion for discretionary review are quite lengthy and date back to at least 1984, but were concisely set forth by the Nelson Circuit Court in its May 19, 2022 Opinion and Order as follows:

> By way of background, the Commonwealth of
> Kentucky, Department of Highways, purchased property

from M.J. Wickham in 1964. The Commonwealth then established an access road designated as Frontage Road J, being .572 miles in length, for the construction of the Bluegrass Parkway. After the Commonwealth purchased Frontage Road J, the Hurst family purchased [the subject] real property from M.J. Wickham and W.M. Wickham. To access said property, Hurst would turn off of Browns Lane and travel to the end of Frontage Road J (now known as Sanders Lane). The Commonwealth transferred Sanders Lane to Nelson County in 1983.

To further complicate matters, this roadway does not end at the .572 mile marker. Instead, it continues past the Hurst property and runs to another landowner, the Hendricks. In 1984, the Hurst family filed a lawsuit against the Hendricks family [*Hurst v. Hendricks*, Civil Action 1984-CI-0213] over the use and maintenance of this 'private roadway." To date, this litigation has never been resolved.

On December 15, 1998, the Nelson County Fiscal Court adopted a resolution which authorized an encroachment on county roads for the Bloomfield Water Project. The resolution indicated that funding had been obtained for waterline construction serving residents on several county roads, including Sanders Lane. The City of Bloomfield thereafter installed a waterline that runs down Sanders Lane to a fire hydrant. Testimony was provided that this county road runs past the fire hydrant and adjacent to the Hurst property for approximately four hundred (400) to five hundred (500) feet until it reaches the private roadway.

May 19, 2022 Opinion and Order at 1-2 (citations omitted).

In early 2002, Hurst wrote a letter to the Nelson County Engineer, Jim Lemieux. Therein, Hurst requested permission to extend the existing waterline just beyond the pavement on Sanders Lane, a distance of approximately 150 yards.

Hurst proposed placing the waterline approximately 10 feet from the edge of the gravel or pavement, which would place the waterline within the County's existing right-of-way.

Lemieux responded by letter and denied Hurst's request. Lemieux reasoned that the County usually requires waterlines to be placed in private property easements, rather than in the County's right-of-way, so as to avoid any future roadway maintenance problems. Lemieux also noted that Sanders Lane would likely require widening in the future and, if so, there would be additional cost to relocate the waterline. Lemieux informed Hurst that to contest the denial of his request for placement of the waterline he must submit a written request to the Nelson County Fiscal Court (Fiscal Court).

Approximately two years later, Hurst, *pro se*, submitted a written request to the Fiscal Court challenging the denial of his request for an extension of the waterline. As a result, the Fiscal Court provided notice in the local newspaper that it would be considering the right-of-way encroachment request for Sanders Lane at its June 29, 2004 meeting. It is undisputed that Hurst did not attend the meeting. The Fiscal Court members voted unanimously to deny Hurst's request for placement of the waterline within the right-of-way and concluded that the waterline should be placed on private property consistent with the County's existing policy.

On June 28, 2005, Hurst filed a complaint in the Circuit Court (Action No. 05-CI-00464) against the Fiscal Court. Therein, Hurst sought a declaration that the Fiscal Court did not have a legal interest in the road known as Sanders Lane, where it passed through Hurst's property. Following Hurst's deposition, wherein he refused to answer questions, Hurst voluntarily dismissed his complaint against the Fiscal Court on December 5, 2006.

In August of 2007, the County became aware Hurst was constructing a waterline in the right-of-way along Sanders Lane. The County, through Lemieux, mailed a Notice of Violation to Hurst. The County then sent a crew to remove the waterline. Hurst confronted the County's employees and the Nelson County Sheriff's Department had to be dispatched to Sanders Lane. On August 15, 2007, Lemieux sent another letter to Hurst that provided: "your decision to not cooperate with the County and your inane actions have forced me to turn this information over to the Nelson County Attorney's office for their review and legal action." May 19, 2022 Opinion and Order at 5.

In early December 2007, the County noticed Hurst had constructed a fence line that ran parallel to Sanders Lane and the existing waterline. The Nelson County Attorney (County Attorney) sent a letter to Hurst notifying him that his waterline and fence line both had been installed without the proper encroachment permits. The County then had a survey conducted by Charles R. Meyer, PE, LS

(Meyer) to establish the right-of-way for Sanders Lane across the Hurst property. The survey confirmed that Hurst's waterline and fence were located within the County's right-of-way.

On April 25, 2008, Hurst was summonsed to appear in District Court for the violations of the County's right-of-way without an encroachment permit (Criminal Action Nos. 08-M-00634 and 08-M-00635). On March 3, 2009, Hurst filed a motion to continue and a motion to dismiss both criminal actions. Over the next several years there were numerous motions made, trials scheduled, and continuances granted. Many of the motions to continue were made by counsel for Hurst, and, if motions were made by the County Attorney instead, Hurst, through counsel, either acquiesced in the continuance or failed to object to the delay. The majority of the continuances were attributable to the parties awaiting resolution of the civil action in Nelson Circuit Court (*Hurst v. Hendricks*, Action No. 1984-CI-0213). That 1984 action had been filed by Hurst against Hendricks, an adjoining property owner, to resolve issues regarding maintenance of Sanders Lane. Despite there being no resolution of the civil action, on December 20, 2018, the District Court returned the criminal action to the District Court's active docket.

On November 20, 2021, following a jury trial, Hurst was adjudicated guilty of violating the county ordinance prohibiting installation of a waterline and a fence line within the County's right-of-way without an encroachment permit. The

jury assessed fines against Hurst in the amount of $24,915.00 and $16,610.00, respectively. Hurst then pursued a direct appeal to the Circuit Court. By Opinion and Order entered May 19, 2022, the Circuit Court affirmed the District Court's adjudication that Hurst violated the county ordinance requiring an encroachment permit when he placed a waterline in the County's right-of-way; however, the Circuit Court reversed the District Court's adjudication that Hurst violated the same county ordinance for placement of the fence line in the County's right-of-way. The Circuit Court remanded to the District Court for entry of a judgment consistent with its May 19, 2022 Opinion and Order. This appeal and cross-appeal follow.

### APPEAL NO. 2022-CA-0693-DG

I.      Subject Matter Jurisdiction

Hurst initially contends the Circuit Court erred by determining the District Court had subject matter jurisdiction to decide the case. It is well settled that "subject matter jurisdiction concerns the very nature and origins of a court's power to do anything at all . . . and may be raised at any time." *Commonwealth v. Vibbert*, 397 S.W.3d 910, 913 (Ky. App. 2013) (internal quotation marks and citations omitted) (quoting *Hisle v. Lexington-Fayette Urb. Cnty. Gov't*, 258 S.W.3d 422, 430-31 (Ky. App. 2008)); *see also Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 47 (Ky. 1996). Where a judgment is entered by a court

without subject matter jurisdiction, the judgment is void. *Vibbert*, 397 S.W. 3d at 913 (citations omitted). However, "[o]nce a court has acquired subject matter . . . jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the existence of [subject matter] jurisdiction." *Delahanty v. Commonwealth*, 558 S.W.3d 489, 500 (Ky. App. 2018) (citation omitted). And, "[w]hether a court was acting outside its jurisdiction is generally a question of law" and is reviewed *de novo*. *Hisle*, 258 S.W.3d at 428.

KRS[2] 24A.110 defines the jurisdiction of Kentucky's district courts and provides in relevant part:

> (1) The District Court shall have exclusive jurisdiction to make final disposition of all criminal matters, including violations of county, urban-county, or city ordinances or codes. . . .

Therefore, Hurst's violations of the Nelson County drainage ordinance are obviously a criminal matter the legislature intended to place within the jurisdiction of the district court.

More particularly, Hurst asserts that district courts have limited jurisdiction over misdemeanors and relatively minor disputes and that although "technically arising from a misdemeanor, the pursuit of an amount of six-figures

---

[2] Kentucky Revised Statutes.

(for violations of the county ordinance that required the encroachment permit) could not have been contemplated by the electorate as being pursued in district court." Hurst's Brief at 14. Although not specifically argued in Hurst's appellate brief, it appears his concern was the dollar amount of the fine imposed upon him. Though Hurst did not state what he believed the financial limit of the District Court's jurisdiction to be, we can only assume he is referencing KRS 534.040.

KRS 534.040 provides, in relevant part:

(2) *Except as otherwise provided for an offense defined outside this code*, a person who has been convicted of any offense other than a felony shall be sentenced, in addition to any other punishment imposed upon him, to pay a fine in an amount not to exceed:

(a) For a Class A misdemeanor, five hundred dollars ($500); or

(b) For a Class B misdemeanor, two hundred fifty dollars ($250); or

(c) For a violation, two hundred fifty dollars ($250).

(Emphasis added.) The County drainage ordinance was established by the Fiscal Court, not the Kentucky General Assembly. It is clearly "an offense defined outside this code" and not subject to the limits found in the statute. However, even if it were, the fines set forth in the county ordinance comply with the statute:

§5.4 Penalties

Any person, firm or corporation who violates or fails to
comply with any of the provisions of this ordinance shall
be guilty of a misdemeanor, and upon conviction, shall
be subject to a fine of not less that twenty-five dollars
($25.00) nor more than two hundred and fifty dollars
($250.00).  A separate offense shall be deemed
committed upon each day on which a violation occurs or
continues.

Action No. 08-M-00634 at 27.

In the case *sub judice*, after finding Hurst guilty of encroaching on the

County right-of-way with both a waterline and a fence, the jury was instructed,

pursuant to the ordinance, that a separate fine could be imposed for each day that

Hurst was in violation of the county ordinance.  Hurst was asked if he had any

objection to the jury instructions, and Hurst responded in the negative.  Those

instructions found on Verdict Form B read as follows:

### VERDICT FORM B1

Having found the defendant guilty of performing work
within the County Right of Way without an
encroachment permit for installing a waterline, you shall
now fix his punishment at a fine of no less than $25.00
per day and no more than $250 per day with each day
that the violation occurred or continued to occur from
August 4, 2007[,] through today's date, with each date
being a separate fine.

. . . .

-11-

**VERDICT FORM B2**

Having found the defendant guilty of performing work within the County Right of Way without an encroachment permit for installing a fence line, you shall now fix his punishment at a fine of no less than $25.00 per day and no more than $250 per day with each day that the violation occurred or continued to occur from August 4, 2007[,] through today's date, with each date being a separate fine.

Action No. 08-M-00635 at 261. For the violation concerning the waterline, the jury assessed a fine *below* the minimum, in the amount of $15.00 for each day of violation (1,661 days), totaling $24,915.00; and, for the violation concerning the fence line, the jury also assessed a fine *below* the minimum, in the amount of $10.00 for each of the 1,661 days the jury believed Hurst to have been in violation of the ordinance, totaling $16,610.00. Action No 08-M-0635 at 261.[3] Therefore, no individual fine exceeded the maximum amount set forth in the county ordinance or the statutory maximum as identified in KRS 534.04. As we are unaware of any authority that places a limit upon the cumulative assessment of fines nor has Hurst cited any such authority, we believe no error was committed in the cumulative assessment of fines against Hurst.

In sum, the District Court had subject matter jurisdiction over the case at its inception, and it was not divested of that jurisdiction once the jury

---

[3] The jury was advised not to issue any fines for the time in which Hurst's criminal cases were held in abeyance or for the days that trials were continued due to the COVID-19 pandemic.

recommended, and the Court imposed fines totaling $41,525.00.  As such, we conclude Hurst's contention that the District Court lacked subject matter jurisdiction over this matter to be wholly without merit.

II.     Speedy Trial

Hurst next asserts his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution was violated.  Hurst complains that the time between the initiation of the proceedings against him (April 25, 2008) and the eventual trial (November 20, 2021) violated his right to a speedy trial.  We disagree.

When determining whether a defendant has been denied his constitutional right to a speedy trial there are four factors to consider.  *Smith v. Commonwealth*, 361 S.W. 3d 908, 914 (Ky. 2012) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)); *Bratcher v. Commonwealth*, 151 S.W.3d 332, 334 (Ky. 2004).  The four factors relevant to a speedy trial are:  (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  *Smith*, 361 S.W. 3d at 914.  None of these four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  *Id.*  Rather, the factors are related and must be considered along with other relevant circumstances.  *Id.*

The first factor to consider when evaluating whether a defendant's right to a speedy trial has been violated is whether the length of the delay is presumptively prejudicial. And, to a certain extent, the length of the delay is a "triggering mechanism." *Id.* In other words, unless there is a delay that is "presumptively prejudicial, there is no necessity for inquiry into the other factors." The length of the delay is measured by "the time between the earlier of the arrest or the indictment and the time the trial begins." *Id.*

In this case, on April 28, 2008, Hurst was served a summons to appear in District Court (Action Nos. 2008-M-00634 and 2008-M-00635) for violating the county ordinance that prohibited placing a waterline or a fence line in the county's right-of-way without an encroachment permit. The trial in this case commenced on September 30, 2021. Here, the nearly thirteen-year delay is certainly presumptively prejudicial. *See Goncalves v. Commonwealth*, 404 S.W.3d 180, 199 (Ky. 2013) ("This Court has generally considered delays of over one year to be presumptively prejudicial."). As the delay in this case is presumptively prejudicial, inquiry into the other three factors is necessary.

Second, when considering a potential violation of the right to a speedy trial the Court must consider the reasons for the delay. *Smith*, 361 S.W. 3d at 914. There were a few reasons for the delays that occurred in this case. Initially, on March 20, 2009, Hurst filed a motion to dismiss the criminal actions, or in the

-14-

alternative, to hold the actions in abeyance. In that motion, Hurst specifically stated: "Should this case not be dismissed outright for the fact there is no violation based on the admitted right of way, then it should, at a minimum, be postponed until after the final resolution of the civil case." Action No. 08-M-0634 at 111. By order entered March 24, 2009, the District Court granted the continuance. Following entry of the order granting continuance, the District Court held periodic reviews at which counsel for Hurst appeared. Officially, on August 16, 2010, as requested by Hurst, the District Court placed the criminal actions in abeyance, pending outcome of the civil action Hurst had filed against Hendricks (*Hurst v. Hendricks*, Action No. 1984-CI-0213). Over the next several years, the District Court continued to place the criminal matter on for review at approximately six-month intervals. At most of these reviews, Hurst was present by counsel and either requested or acquiesced to the ongoing abeyance. In early 2018, Hurst filed a *pro se* motion to dismiss the criminal actions for lack of prosecution. Then, on December 20, 2018, the District Court placed the criminal actions back on the active docket though the civil action had not yet been resolved. Shortly thereafter, on February 4, 2019, Hurst filed a motion for a speedy trial. Though some eight years had passed between the criminal cases being placed in abeyance and Hurst's motion to dismiss, once Hurst moved to dismiss the actions the District Court returned the criminal cases to the active docket. In his response/reply brief, Hurst

acknowledged that the case began moving forward once he "eliminated counsel" who had been appearing on his behalf. (Appellant's Reply/Response Brief at 5.) Thus, we believe that the reasons for delay in this case weigh against finding a violation of Hurst's right to a speedy trial.

The third factor to consider when evaluating a defendant's assertion of the right to a speedy trial is whether the defendant asserted his right to a speedy trial. *See id.* Hurst first appeared before the District Court on these charges on May 20, 2008. At Hurst's own request, the criminal charges against him were held in abeyance in August of 2010, presumably so Hurst could pursue resolution of a related civil case he believed would affect the outcome of the criminal proceedings. As of the rendering of this Opinion, the civil case remains unresolved. In January of 2018, Hurst filed a motion to dismiss for lack of prosecution. Between January 2018 and December of 2018, Hurst's cases appeared on the docket multiple times until, officially on December 20, 2018, the abeyance was lifted. On February 4, 2019, Hurst filed a motion for speedy trial. Though Hurst moved for a speedy trial, it is relevant to our analysis that he did not do so until some eight years *after* the criminal cases had been placed in abeyance. Once Hurst moved to dismiss the criminal actions, the cases were returned to the active docket and eventually proceeded to trial. It is likewise relevant to our analysis that Hurst requested and was granted additional continuances even after

these motions were filed. Additional delays were due to the COVID-19 pandemic. Though Hurst complains of the delay, Hurst, through counsel, requested, received, and acquiesced to multiple continuances. Nor did he bring his concerns to the District Court for nearly a decade. These factors all weigh against Hurst's claim that his right to a speedy trial was violated.

The fourth and final factor to consider when evaluating a defendant's right to a speedy trial is whether the defendant was prejudiced by the delay. *See id.* at 917. There are three interests that the right to a speedy trial was designed to protect: "(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Id.* at 917-18 (citing *Barker*, 407 U.S. at 532). The third interest is the most important. *Smith*, 361 S.W.3d at 918. However, "[c]onclusory claims about . . . the possibility of an impaired defense are not sufficient to show prejudice." *Id.* at 918-19 (citation omitted). Therefore, actual prejudice must be demonstrated. *Id.*

In the case *sub judice*, Hurst was not incarcerated pending trial, so the first interest was not violated. As to the second intertest, Hurst has not asserted he suffered from any anxiety or concern caused by the delay in resolution. As to the third interest, Hurst asserts that his defense was impaired by the delay because the County conducted roadwork on Sanders Lane which shifted the roadway closer to the waterline. However, Meyer, whose survey the Commonwealth relied on in

-17-

bringing the charges against Hurst, based his measurements off the original road plan, not the current location of the road. Therefore, a shift of the roadway closer to Hurst's property would not impact his conclusions. Hurst has failed to offer anything other than conclusory claims to demonstrate actual prejudice. As actual prejudice must be demonstrated, we conclude that Hurst has failed to show that his defense was impaired by any delay in the case. And, even if Hurst suffered some small degree of prejudice, it is outweighed by the fact that he either requested or acquiesced in many of the delays. Once Hurst asserted his right, the District Court moved the case back to the active docket. Any delay thereafter was attributable to Hurst or the COVID-19 pandemic. Thus, we believe the circuit court correctly concluded that Hurst's right to a speedy trial was not violated.

III.    County Attorney as a Witness

Hurst next asserts the Circuit Court erred by not permitting him to call the County Attorney as a witness. It is well settled that issues raised in an appellate brief but not raised in the motion for discretionary review will not be addressed by the Court on appeal. *Wells v. Commonwealth*, 206 S.W.3d 332, 335 (Ky. 2006). As Hurst failed to raise the issue of calling the County Attorney as a witness in his motion for discretionary review, we are prohibited from reviewing the issue here. *See id.*

In sum, we do not believe Hurst is entitled to relief upon any of the claims he asserted in Appeal No. 2022-CA-0693-DG. Thus, we affirm the Circuit Court's decision to affirm the District Court's adjudication that Hurst violated the county ordinance as to placement of the waterline in the County's right-of-way without an encroachment permit.

### CROSS-APPEAL NO. 2022-CA-1273-DG

The Commonwealth asserts the Circuit Court erroneously determined that an answer to an interrogatory about the right-of-way in a prior civil action was a conclusive judicial admission against the Commonwealth in Hurst's criminal actions. Based upon the judicial admission, the Circuit Court believed Hurst was entitled to a directed verdict of acquittal as to the violation for placement of the fence line.

It is well established that "[a] judicial admission is a formal statement concerning a disputed fact, made by a party during a judicial proceeding, that is adverse to that party, and that is deliberate, clear, and uncontradicted." *Zapp v. CSX Trans., Inc.*, 300 S.W.3d 219, 223 (Ky. App. 2009) (citations omitted) (citing *Sutherland v. Davis*, 151 S.W.2d 1021 (Ky. 1941)). However, "a judicial admission in one action is not conclusive in another action" unless the parties are the same in both actions. *Center v. Stamper*, 318 S.W.2d 853, 855-56 (Ky. 1958).

And, it is of paramount importance that the statement is uncontradicted as explained in *Zapp*:

> A party is bound and concluded by his or her own uncontradicted testimony, whether elicited on direct or cross-examination. Ordinarily, uncontradicted testimony remains subject to the scrutiny of the trier of fact as to its credibility and may be rejected by them where it is not believed. However, this rule does not apply to uncontradicted testimony by a party adverse to his or her interest; his or her adversary is entitled to hold the testifying party to the testimony given and to demand a verdict or finding accordingly as a matter of law. (Footnotes omitted.)

*Zapp*, 300 S.W.3d at 223 (citing 32A C.J.S. *Evidence* § 1651 (2009)). We review a circuit court's decision upon a judicial admission *de novo*. *Zapp*, 300 S.W.3d at 223 (citations omitted).

In the case *sub judice*, the answer to the interrogatory at the center of this contention originally came from a civil action involving Hurst's limited liability company, Ground Zero Farms, LLC, and the Nelson County Fiscal Court (*Ground Zero Farms, LLC v. Nelson County Fiscal Court*, Action No. 05-CI-00464). In that civil action, Ground Zero Farms, LLC propounded an interrogatory upon the Fiscal Court that stated: "[I]f Sanders Lane is a county roadway state the actual width of the road and the actual width of deeded right of way." The Fiscal Court answered the interrogatory be stating: "There is not a deeded right of way. Pursuant to KRS 178.040 and the previous court action in the *Hendricks* case, it is

-20-

*presumed* to be 30 feet wide." May 19, 2022 Opinion and Order (emphasis added).

During Hurst's criminal trial, the Commonwealth elicited testimony from Charles Meyer about his survey of Sanders Lane and the relevant right-of-way. Meyer did more than *presume* the measurements. He located original reference points and plotted the roadway, the right-of-way, the waterline, and the fence line on his survey. Meyer's testimony indicated that both Hurst's waterline and Hurst's fence line were within the right-of-way. The Circuit Court bound the Commonwealth to the earlier statement made by the Fiscal Court in the civil interrogatory response *and* the Circuit Court concluded that response mandated a directed verdict when viewed with other testimony from the trial.

It is undisputed that the interrogatory response and Meyer's testimony about his survey were made in two different actions (one civil and one criminal), the two actions involved different parties (an LLC created by Hurst and the Fiscal Court in the civil action and then Hurst and the Commonwealth of Kentucky in the criminal action), and the two statements (the answer to the integratory in the civil action and the testimony of Meyers in the criminal action) were contradictory to the extent that the Circuit Court viewed one as leading to Hurst's conviction of the right-of-way violation for his fence line and the other as requiring a directed verdict. In addition, we find the wording of the Fiscal Court's interrogatory response to be hardly unequivocal, and the civil action was dismissed before

resolution of matters, such as the precise location of the right-of-way, were determined. As such, we believe the Circuit Court erred by determining the Fiscal Court's answer to the interrogatory in the civil action was a judicial admission by the Commonwealth regarding the location of the right-of-way for purposes of the criminal action. In fact, the circuit court even stated in its May 19, 2022 Opinion and Order that "[t]he County's answer clearly contradicts Meyer's subsequent survey of the Sanders Lane right-of-way." As the prior interrogatory response does not constitute a judicial admission, we reverse the Circuit Court's judgment ordering the District Court to direct a verdict of acquittal in favor of Hurst on the fence line violation. Accordingly, we remand to the Circuit Court to enter an order reinstating the judgment of the District Court as to Hurst's violation of the county ordinance relative to the fence line.

We view any remaining contentions of error to be moot or without merit.

For the foregoing reasons, we affirm Appeal No. 2022-CA-0693-DG and we reverse and remand Cross-Appeal No. 2022-CA-1273-DG.


ALL CONCUR.

-22-

BRIEFS FOR APPELLANT:                BRIEFS FOR APPELLEE:

Dawn L. McCauley                     Daniel Cameron
Lebanon, Kentucky                    Attorney General of Kentucky

                                     Kristin L. Conder
                                     Assistant Attorney General
                                     Frankfort, Kentucky